CHRISTOPHER G. WARD, CA Bar No. 238777
   cward@foley.com
ARCHANA R. ACHARYA, CA Bar No. 272989
   aacharya@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3500
LOS ANGELES, CA 90071-2411
TELEPHONE:  213.972.4500
FACSIMILE:   213.486.0065

Attorneys for Defendants MENZIES AVIATION, INC. and MENZIES AVIATION GROUP (USA), INC.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| JESSICA JIMENEZ and ORLANDO MIJOS, individually and on behalf of all other current and former similarly situated California employees of Defendants,,<br><br>Plaintiff,<br><br>vs.<br><br>MENZIES AVIATION, INC., MENZIES AVIATION GROUP (USA), INC., and DOES 1 THROUGH 10, inclusive,<br><br>Defendant. | Case No.<br><br>**DEFENDANTS MENZIES AVIATION, INC.'S AND MENZIES AVIATION GROUP (USA), INC.'S NOTICE OF REMOVAL (CAFA JURISDICTION)** |

DEFENDANTS' NOTICE OF REMOVAL
Case No.

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION:**

**PLEASE TAKE NOTICE** that Defendants Menzies Aviation, Inc. and Menzies Aviation Group (USA), Inc. (hereinafter collectively referred to as "Menzies") hereby invoke this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1332, 1441, & 1446, as amended by the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 118 Stat. 4 ("CAFA"), and state the following grounds for removal to the United States District Court for the Northern District of California:

## I. RELEVANT PROCEDURAL HISTORY

1. On or around June 2, 2010, Plaintiff Jessica Jimenez ("Plaintiff") commenced this action by filing a Complaint in the Superior Court of the State of California, County of San Francisco, entitled "*Jessica Jimenez, individually and on behalf of herself and others similarly situated, vs. Menzies Aviation, Inc., et al*" Case No. CGC-10-500367.  Plaintiff served Menzies with the Complaint on or around July 9, 2010.

2. On or around August 9, 2010, Menzies removed the action to federal court under the grounds of diversity jurisdiction (Case No. 3:10-cv-03477-EMC).

3. Following Menzies' original removal of this action, Plaintiff did not move to remand this case or otherwise claim the amount in controversy requirement for federal jurisdiction did not exist.  Nonetheless, in response to Menzies' Motion to Dismiss and acting *sua sponte*, on March 11, 2011, this Court issued an Order to Show Cause regarding the amount in controversy to satisfy diversity jurisdiction requirements.  On March 28, 2011, Menzies filed a comprehensive brief, along with supporting background evidence, demonstrating how it was reasonably cognizable, within the parameters of Plaintiff's pleading, that the $75,000 diversity jurisdiction threshold was met.  In that brief, Menzies also asserted that, though it had not removed the case under the Class Action Fairness Act ("CAFA"), the district court would also independently have subject matter jurisdiction under CAFA, again reasonably based on the allegations of Plaintiff's

1  Complaint.

2  4. Notwithstanding that showing made by Menzies, on April 8, 2013, the district court remanded this case to the Superior Court of the State of California, County of San Francisco. In the district court's opinion, it stated that it was remanding because it contended Menzies was required to provide "persuasive summary judgment-type evidence" establishing that it was more likely than not that that the amount of controversy surpassed the $75,000 jurisdictional requirement and that Menzies had not satisfied such requirement. The district court further acknowledged that Menzies had not removed on CAFA grounds, and that even if it had, there was an absence of persuasive, summary-judgment type evidence making it more likely than not that the amount in controversy was met for CAFA purposes.

5. On December 14, 2014, the Supreme Court issued its opinion in *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. ___, 135 S. Ct. 547 (2014). In that opinion, the Supreme Court held that "as supplied by the removal statute itself [a] statement 'short and plain' need not contain evidentiary submissions." *Id.* at 551. Thus, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 554. The Supreme Court further explained that if the plaintiff subsequently contests or challenges the amount in controversy, only then is the defendant is required to show – and only by a preponderance of the evidence and not with "legal certainty" or "summary judgment-type evidence" – that the amount in controversy exceeds the jurisdictional threshold. *Id.* at 553-554.

6. On or around April 7, 2015, Plaintiff sought leave in the Superior Court of California seeking to add a new putative class representative and expand her theories of liability beyond what Plaintiff had pled in the then-operative First Amended Complaint. On April 29, 2015, the state court granted Plaintiff's Motion for Leave to File a Second Amended Complaint.

7. On May 1, 2015, Plaintiffs Jessica Jimenez and Orlando Mijos ("Plaintiffs") filed their Second Amended Complaint ("SAC") in the Superior Court of the State of

California, County of San Francisco, entitled "*Jessica Jimenez and Orlando Mijos, individually and on behalf of all other current and former similarly situated California employees of Defendants, vs. Menzies Aviation, Inc., et al*" Case No. CGC-10-500367. A true and correct copy of the Summons and Complaint and all other state court process and pleadings in this matter are attached to the Declaration of Christopher Ward as Exhibit "A," and a true and correct copy of the all federal court process and pleadings in this matter are attached to the Declaration of Christopher Ward as Exhibit "B." The entirety of both exhibits are incorporated herein by reference.

8. The SAC contains five purported causes of action asserting that Menzies violated various California wage and hour laws. Specifically, the SAC alleges the following theories of liability in connection with Plaintiffs' employment, as well as the employment of a putative class of "similarly situated" individuals: (1) Failure to Pay Minimum Wages; (2) Failure to Pay Overtime Wages; (3) Failure to Timely Pay All Wages Due Upon Separation of Employment; (4) Failure to Provide Accurate Itemized Wage Statements; (5) Failure to Provide Tools and Equipment and Reimburse Business Expenses; (6) Unfair and Unlawful Business Practices; and (7) Penalties under the Labor Code Private Attorneys General Act ("PAGA") representative action.

9. As demonstrated below, this Court has original jurisdiction over each of the SAC's claims under CAFA.

## II. PLAINTIFFS' SAC HAS CREATED A NEW GROUND FOR REMOVAL UNDER CAFA AND THE DISTRICT COURT PREVIOUSLY REMANDED THIS MATTER ON ERRONEOUS GROUNDS, MAKING THIS REMOVAL PROPER

10. Although "[a]s a general rule, a party is not entitled to file a second notice of removal upon the same grounds where the district court previously remanded the action…[t]he general prohibition on successive removals, however, does not apply 'when subsequent pleadings or events reveal a new and different ground for removal.'" *Andersen v. Schwan Food Co.*, 2014 U.S. Dist. LEXIS 41698 (C.D. Cal. Mar. 26, 2014),

citing *Kirkbride v. Continental Casualty Co.*, 933 F. 2d 729, 732 (9th Cir. 1991). In other words, if a "first remand was on grounds that subsequently became incorrect, the[n] successive removal is permissible." *Reyes v. Dollar Tree Stores, Inc.*, 781 F. 3d 1185, 1188, 1189 (9th Cir. 2015) (finding that although the district court previously remanded the case for defendant's failure to establish CAFA jurisdiction, the state court's subsequent granting of class certification acted like an amendment of the pleadings, and thus created CAFA jurisdiction, permitting removal to federal court). "When pleadings are amended so as to establish federal jurisdiction where none existed before, a successive removal petition is plainly proper." *Id.* at 1188-89.

11. Additionally, as noted above, the original remand order in this case depended upon the district court's conclusion that Menzies had not provided "persuasive summary judgment-type evidence" establishing that it was more likely than not that that the amount of controversy requirement was met. However, the Supreme Court's opinion in *Dart Cherokee Operating Basin* demonstrates that the wrong standard was used to remand this matter back to state court. Pursuant to *Dollar Tree Stores*, the remand of this case on grounds that subsequently became incorrect – specifically, the clarification that the proper legal standard for assessing the amount in controversy was not applied to this matter – makes "a subsequent removal petition … plainly proper." 781 F.3d at 1188-89.

12. A party can properly remove a case under CAFA at any time, regardless of how long ago the case was filed. 28 U.S.C. § 1453(b); *see e.g. Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1126 (9th Cir. 2013)("…a CAFA case may be removed at any time, provided that neither of the two thirty-day periods under § 1446(b)(1) and (b)(3) has been triggered").

13. There is no procedural bar to Menzies removal of this action under CAFA because the filing of the SAC provides a new and different ground for removal, *Dollar Tree Stores*, 781 F.3d at 1188-89, and the fact that the original basis for remanding this action was based on improper legal standards also makes this removal "plainly proper." *Id*.

## III. THE ELEMENTS ESTABLISHING CAFA JURISDICTION EXIST HERE

14. Removal jurisdiction exists under CAFA over (a) a class action complaint where, (b) there are at least 100 class members, (c) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and (d) there exists minimal diversity between plaintiffs and defendant. *See* 28 U.S.C. §§ 1332(d)(1)(B), (d)(5)(B), (d)(2), and (d)(2)(A)-(C). Plaintiffs' SAC meets these jurisdictional requirements for CAFA removal.

### A. THE SAC IS A CLASS ACTION THAT SEEKS TO REPRESENT A CLASS OF WELL OVER 2,000 MEMBERS

15. In the SAC, Plaintiffs seek certification of a representative class action, based on California Code of Civil Procedure § 382 and as a representative action under the Private Attorney General Act ("PAGA"). Indeed, on the caption, Plaintiffs specifically identify this matter as a "CLASS ACTION." [Declaration of Christopher Ward ("Ward Decl."), Ex. A, SAC at p. 1.]

16. Plaintiffs purport to represent a proposed class consisting of all current and former non-exempt employees of Menzies employed at San Francisco International Airport ("SFO") who (i) from June 2, 2006 to the present worked at least one shift that ended between 11:54 p.m. and 5:28 a.m. and began between 1:35 a.m. and 5:28 a.m. (ii) from June 2, 2006 to the present worked at least one shift that crossed the midnight hour; (iii) from June 2, 2007 [sic] to the present separated from employment with Menzies; (iv) from June 2, 2006 to the present received at least one wage statement that did not show the correct number of regular and overtime hours worked during the workweek; and (v) from June 2, 2006 to the present were employed as a passenger service agent or lead passenger service agent. [Ward Decl., Ex. A, SAC at pp. 10-11, ¶¶ 60, 62, 64, 66, and 68.] Plaintiffs' SAC thus seeks to represent five groups of employees working at SFO over the course of *nine* years.

17. Based on a good faith review of the information currently available, Menzies has determined that there are approximately 2,100 non-exempt hourly current and former

Menzies employees who may fall into at least one of the five putative classes set forth in the SAC. [Ward Decl., ¶ 7.]

18. As a result, taking Plaintiffs' allegations as true, there are most certainly more than 100 members in the proposed class.

## B. THE CLASS AMOUNT IN CONTROVERSY EXCEEDS $5,000,000

### 1. The Class Amount In Controversy Exceeds The Jurisdictional Requirement

19. Menzies denies any liability in this case and intends to vigorously oppose Plaintiffs' individual claims as well as class certification of the putative class claims. Menzies believes that class treatment is inappropriate under the circumstances here (including because Plaintiffs' claims are legally unfounded) and that there are many differences between the named Plaintiffs and the various putative class members Plaintiffs seek to represent. Menzies expressly reserves all rights in this regard and specifically concedes nothing, and reserves all defenses regarding any issues of damages.

20. Plaintiffs allege class-wide economic damages, liquidated damages, monies pursuant to Labor Code section 226(e), indemnification of expenses or losses under Labor Code section 282, pre-judgment interest, post-judgment interest, attorneys' fees, costs, statutory civil penalties pursuant to various provisions of the California Labor Code, injunctive relief, and further seek additional civil penalties under PAGA. Applying even minimal sums, the $5,000,000 jurisdictional threshold under CAFA is easily met considering the size – roughly 2,100 Menzies employees and a nine year class period – of the putative class. [Ward Decl., ¶ 7.]

21. Plaintiffs' allegations regarding the scope and extent of the purported wage and hour violations are virtually non-existent in that the SAC provides no concrete information from which actual damages can be reasonably calculated. However, because there need only be a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold," *Dart Cherokee*, 135 S. Ct. at 551, Menzies need only show what the scope of the alleged liability in the case could be based on the parameters created by

Plaintiffs' SAC.

### a. Plaintiffs' Allegations For Unpaid Minimum Wages Alone Exceed the Jurisdictional Limit

22. Plaintiffs allege that non-exempt employees working at SFO are required to work shifts that sometimes end between 11:54 p.m. and 5:28 a.m., and/or start between 1:35 a.m. and 5:28 a.m. [Ward Decl., Ex. A, SAC at p. 5, ¶¶ 27-28], and further allege that Plaintiff Mijos "typically" worked shifts like these that crossed the midnight hour. [Id. at ¶ 26.] Alleging that there is no reasonable way for these employees to arrive at their designated work areas other than parking in the designated lots and riding the Menzies or SFO shuttle, Plaintiffs claim that they spent a total of one to two hours per shift waiting for and riding the shuttle bus. [Id. at ¶¶ 36-40.] Plaintiff Jimenez alleges her rate of pay during her employment ranged from $14.83 to $16.44 [Id. at ¶ 25], such that an applicable hourly rate could be $15.00. Accepting Plaintiffs' allegations as true, the putative class members in Plaintiffs' SFO Non-Exempt Class claim, on average, $22.50 per shift (1.5 hours) for time spent waiting for the shuttle. [*See also* Ward Decl., ¶ 7.] Applying the conservative and plausible notion that each putative class member worked only three shifts a week, for only one year, and for fifty weeks in that year[1], a plausible allegation for the amount in controversy for this cause of action alone could be over $7,000,000.00. [Ward Decl., ¶ 8.]

### b. Plaintiffs' Allegations For Unpaid Overtime Alone Exceed The Jurisdictional Limit

23. As with the SAC's allegations regarding minimum wage violations, the SAC provides no allegations setting parameters for the extent of the purported failure by Defendants to pay putative class members overtime. The SAC simply states that non-exempt employees at SFO "worked more than eight hours in a workday and/or more than forty hours in a workweek and/or more than seventh [sic] days in a work week *at all*

---

[1] The length of employment for non-exempt employees working at Menzies ranges from 1 year to 15 years. [Ward Decl., ¶ 7.] Plaintiff Jimenez worked for 13 months and Plaintiff Mijos worked for 5.5 years. [Id.]

DEFENDANTS' NOTICE OF REMOVAL
-7-
Case No.

*relevant times*" and that Menzies failed to pay employees for all hours worked. [*See e.g.* Ward Decl., Ex. A, SAC at p. 7, ¶ 43 (emphasis added).] Using the same methodology applied above, and assuming that each putative class member worked for only one year and worked only three hours of overtime per week during that year – again, parameters far more conservative than those suggested by the SAC, as the SAC alleges both daily overtime and seventh day premiums – a plausible amount in controversy for the putative class's unpaid overtime at issue alone could be over $7,000,000.00. [Ward Decl., ¶ 9.]

### c. Plaintiffs' Allegations For Waiting Time Penalties Alone Exceed The Jurisdictional Limit

24. As a derivative of Plaintiffs' claims for unpaid minimum and overtime wages, the SAC seeks waiting time penalties for terminated putative class members under Cal. Labor Code § 203. Such penalties are calculated using the employee's daily rate of pay for a maximum of 30 days. According to Menzies records, approximately 1,600 members of the putative class left employment more than 30 days prior to the filing of this Notice of Removal. [Ward Decl., ¶ 7.] Accordingly, the SAC seeks approximately $5,760,000.00 in waiting time penalties alone. [Ward Decl., ¶ 10.]

### d. Plaintiff's Allegations For Penalties Related To Inaccurate Wage Statements Alone Exceed The Jurisdictional Limit

25. As another derivative of Plaintiffs' claims for unpaid minimum and overtime wages, the SAC also seeks penalties pursuant to Labor Code § 226, which are calculated in the amount of $50 for the first pay period where a violation occurs and $100 for every subsequent violation, not to exceed $4,000 per employee. Under this category of penalties and with the very conservative estimate that each putative class member worked for Menzies for only one year, the SAC seeks $5,355,000.00 in wage statement penalties alone. [Ward Decl., ¶ 10.]

///
///
///

e. **Additional Claims For Damages And Other Amounts Confirm That The Amount In Controversy Is Well Above The CAFA Jurisdictional Threshold**

26. The above-mentioned damages are only the tip of the proverbial iceberg as to the amounts that satisfy a "plausible allegation" that the amount in controversy meets the requirements for federal jurisdiction. For example, the SAC also seeks the following types of additional damages and penalties:

a. The SAC also seeks reimbursement for the professional fitting, maintenance, and cleaning of all current and former passenger service agents' and lead passenger service agents' uniforms. Plaintiff Jimenez alleges that she alone spent at least $50.00 for the professional fitting of her uniform, and $22.00 per week for its professional cleaning. [Ward Decl., Ex. A, SAC at p. 9, ¶¶ 50-51.] As Plaintiff Jimenez was employed for approximately 57 weeks [Ward Decl., ¶ 7], her damages alone are approximately $1,300.00. [Ward Decl., ¶ 11.] Using, yet again, a conservative estimate that each putative class member worked for Menzies for only a year and taking Plaintiff's allegations as accurate representations of the putative class, the SAC seeks $39,000.00 for reimbursement damages alone. [Id.]

b. The SAC also seeks class-wide attorneys' fees, an amount properly included in the amount in controversy under CAFA. *Lowdermilk v. United States Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007) (overruled on other grounds); *see also Gibson v. Chrysler Corp.*, 261 F.3d 927, 942 (9th Cir. 2001); *see also Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) (holding that applying 12.5% of the total amount in controversy is a conservative estimate for attorneys' fees). All the above calculations would thus be increased by 12.5% to include the attorney's fees amounts in controversy.

c. Finally, the SAC seeks injunctive relief. Costs for injunctive relief must also be considered in calculating the amount in controversy under CAFA. *See Rodgers v. Cent. Locating Serv., Ltd.*, 412 F. Supp. 2d 1171, 1179-80 (W.D. Wash.

2006), *citing In re Ford Motor Co.*, 264 F.3d 952, 958 (9th Cir. 2001) ("where the value of a plaintiff's potential recovery . . . is below the jurisdictional amount, but the potential cost to the defendant of complying with the injunction exceeds that amount, it is the latter that represents the amount in controversy for jurisdictional purposes"). Though it is clearly not needed given the potential amounts outlined above, the costs associated with Plaintiffs' claim for injunctive relief must also be considered for purposes of assessing the amount in controversy.

27. Based on the foregoing, there is clearly "a plausible allegation" that the amount in controversy set forth in the SAC exceeds the CAFA jurisdictional threshold and removal to this Court under CAFA is proper. *See Lewis*, 627 F.3d at 401, *citing Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008) ("once the proponent of federal jurisdiction has explained plausibly how the stakes exceed the $5 million … then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much").

### C. BOTH MINIMAL AND COMPLETE DIVERSITY EXIST

28. Menzies is informed and believes that, at all times relevant to the SAC, Plaintiffs Jimenez and Mijos were citizens of the State of California and domiciled in California. Although Plaintiffs fail to list their citizenship in the SAC, they admit that at all relevant times, they worked in the County of San Francisco, California. [Ward Decl., Ex. A (SAC), p. 3, ¶ 5.]

29. Plaintiffs admit that both Menzies Aviation, Inc. and Menzies Aviation Group (USA), Inc. are Delaware corporations. [*See* Ward Decl., Ex. A (SAC), ¶¶ 10 and 11.] Menzies' headquarters are located in Texas. [Ward Decl., ¶ 3.] Pursuant to the "principal place of business" definition recently clarified by the Supreme Court in *Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010), Menzies are either citizens of Delaware or Texas.

30. The CAFA requirements for minimal diversity are satisfied so long as any class member is a citizen of a different state than any defendant, despite the lack of

complete diversity of citizenship and even if one of the defendants is a California citizen. *See* 28 U.S.C. §§ 1332(d)(2), 1332(d)(5), 1453(a).

31. Based on the foregoing, minimal and complete diversity for jurisdiction under CAFA is clearly present in this matter.

32. Because Plaintiffs and Menzies are citizens of different states and the amount in controversy threshold are met, this Court has original jurisdiction over all causes of action alleged in this matter pursuant to the CAFA and diversity jurisdiction provisions of 28 U.S.C. § 1332.

## IV. CONCLUSION

33. As outlined above, this Court has original jurisdiction under CAFA such that the entire action may be therefore removed to this Court pursuant to the provisions of 28 U.S.C. § 1441.

34. Menzies believes that the documents contained in Exhibit "A" to the Ward Declaration contain the complete record of filings made in the San Francisco County Superior Court, and that the documents contained in Exhibit "B" to the Ward Declaration contain the complete record of filings previously made in the Northern District Court.

35. The state court granted Plaintiff Jimenez's Motion for Leave to File Her SAC on April 29, 2015 and Plaintiffs filed the SAC on May 2, 2015, such that, conservatively, the deadline for Menzies to remove the matter is May 29, 2015 at the very earliest. As such, the Notice of Removal is timely filed within the period prescribed in 28 U.S.C. § 1446(b).

36. Wherefore, Menzies prays that this action be removed from the Superior Court of the State of California, County of San Francisco to the United States District Court for the Northern District of California, and for such further relief as may be just and proper.

37. Pursuant to 28 U.S.C. § 1446(d), Menzies is filing written notice of this removal with the clerk of the Superior Court for the State of California, San Francisco County. Copies of the Notice of Removal are also being served on Plaintiffs' counsel

1 pursuant to 28 U.S.C. § 1446(d).

2     38.   This Notice of Removal is filed subject to and with full reservation of rights, including but not limited to, defenses and objections to venue, improper service of process, and personal jurisdiction. No admission of fact, law or liability is intended by this Notice of Removal, and all defenses, motions and pleas are expressly reserved.

DATED: May 29, 2015         **FOLEY & LARDNER LLP**
Christopher G. Ward
Archana R. Acharya


*/S/ CHRISTOPHER G. WARD*
Christopher G. Ward
Attorneys for Defendants MENZIES AVIATION, INC. and MENZIES AVIATION GROUP (USA), INC.

|   |   |
|---|---|
| 1 | PROOF OF SERVICE |

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to this action; my current business address is 555 South Flower Street, Suite 3500, Los Angeles, CA 90071-2411.

On May 29, 2015, I served the foregoing document(s) described as: **DEFENDANTS MENZIES AVIATION, INC.'S AND MENZIES AVIATION GROUP (USA), INC.'S NOTICE OF REMOVAL (CAFA JURISDICTION** on the interested parties in this action as follows:

Graham S.P. Hollis, Esq.
Vilmarie Cordero, Esq.
GRAHAMHOLLIS APC
3555 Fifth Avenue
San Diego, California 92103
Telephone: (619) 692-0800
Facsimile: (619) 692-0822
Attorney for Plaintiffs and Aggrieved Employees

__X__   BY MAIL

           ____   I placed the envelope(s) with postage thereon fully prepaid in the United States mail, at Los Angeles, California.

           __X__   I am readily familiar with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service; the firm deposits the collected correspondence with the United States Postal Service that same day, in the ordinary course of business, with postage thereon fully prepaid, at Los Angeles, California. I placed the envelope(s) for collection and mailing on the above date following ordinary business practices.

__X__   Executed on May 29, 2015, at Los Angeles, California.

__X__   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

__X__   I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_____
Diana Galvez

DEFENDANTS' NOTICE OF REMOVAL
Case No. CaseNumber

-1-

4850-7681-3828.1