Graham S.P. Hollis, Esq. (SBN 120577)
ghollis@graham**hollis**.com
Vilmarie Cordero, Esq. (SBN 268860)
vcordero@graham**hollis**.com
**GRAHAMHOLLIS** APC
3555 Fifth Avenue
San Diego, California 92103
Telephone: 619.692.0800
Facsimile: 619.692.0822

Attorneys for Plaintiffs Jessica Jimenez, Orlando
Mijos, and Aggrieved Employees

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JESSICA JIMENEZ and ORLANDO MIJOS, individually and on behalf of all other current and former similarly situated California employees of Defendants,<br><br>Plaintiffs,<br><br>v.<br><br>MENZIES AVIATION, INC., MENZIES AVIATION GROUP (USA), INC., and DOES 1 THROUGH 10, inclusive<br><br>Defendants. | Case No.: 15-CV-02392-WHO<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL THE INDIVIDUAL ARBITRATION OF PLAINTIFF ORLANDO MIJOS AND TO STAY ALL JUDICIAL PROCEEDINGS**<br><br>[FILED AND SERVED CONCURRENTLY WITH: DECLARATION OF VILMARIE CORDERO AND DECLARATION OF PLAINTIFF ORLANDO MIJOS]<br><br>DATE:      August 5, 2015<br>TIME:      2:00 p.m.<br>LOCATION:      Courtroom 2<br><br>Complaint Filed:      June 2, 2010<br>Trial Date:      None set<br>Judge:      Hon. William H. Orrick |

/ / /

/ / /

/ / /

I.  INTRODUCTION ...................................................................................1

II. BRIEF PROCEDURAL HISTORY .........................................................1

III. STATEMENT FACTS ...........................................................................3

    A.  THE SFO NON-EXEMPT CLASS ...............................................3

    B.  DEFENDANTS MENZIES AVIATION ......................................4

    C.  PLAINTIFF MIJOS IS AND WAS A PUTATIVE CLASS MEMBER PRIOR TO SIGNING THE ARBITRATION AGREEMENT ..........................................5

    D.  MENZIES AVIATION ALTERNATIVE DISPUTE RESOLUTION POLICY AND CLASS ACTION WAIVER IS A CONDITION OF EMPLOYMENT ..........................................6

IV. LEGAL STANDARD ............................................................................7

V.  LEGAL ARGUMENTS: ......................................................................10

    A.  THIS COURT SHOULD NOT COMPEL ARBITRATION BECAUSE STATE LAW PRECLUDES THE ENFORCEMENT OF THE CLASS ACTION WAIVER SIGNED BY PLAINTIFF MIJOS AND DEFENDANTS FAILED TO MEET THEIR BURDEN OF PROVING THE APPLICABILITY OF THE FAA TO PLAINTIFF MIJOS ......................10

    B.  THIS COURT SHOULD NOT COMPEL ARBITRATION BECAUSE UNDER BOTH STATE AND FEDERAL LAW THE CLASS ACTION WAIVER SIGNED BY PLAINTIFF MIJOS IS UNENFORCEABLE ............11

        1.  The Class Action and Representative Action Waiver is Void and/or Unenforceable Because It Fails to Disclose Putative Class Members the Pending Litigation and Does Not Provide any Mechanism to Opt Out ..........................................12

        2.  The Imposition of An Arbitration Clause and a Class Action and Representative Action Waiver Renders the Arbitration Agreement and the Class Action Waiver Unconscionable Because it Fails to Disclose Putative Class Members the Pending Litigation and Mijos's Right to Proceed Collectively Is Unwaivable ..........................................15

        3.  The Agreement Is Void and/or Unenforceable Because It Is Unconscionable as It Was Entered under Duress ..........................................16

    C.  THIS COURT SHOULD NOT STAY JUDICIAL PROCEEDINGS BECAUSE DEFENDANTS DID NOT MEET THEIR BURDEN OF PROVING THE APPLICABILITY OF THE FAA AND THE CLASS ACTION WAIVER IS UNENFORCEABLE ..........................................18

VI. CONCLUSION ...................................................................................18

ii                     CASE NO. 15-CV-02392-WHO

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

# TABLE OF AUTHORITIES

<u>Page</u>

## United States Supreme Court Cases

AT & T Technologies, Inc. v. Communication Workers of America
106 S.Ct. 1415 (1986) ........................................................................8

*AT&T Mobility LLC v. Concepcion*
131 S.Ct. 1740 (2011) .................................................................... 8, 11

*Circuit City Stores, Inc. v. Adams* 532 US 105 (2001) ...................... 7, 10

*Doctor's Assocs. v. Casarotto*
517 U.S. 681 (1996) ..........................................................................8

First Options of Chicago, Inc..
514 U.S. at 944, 115 S.Ct. 1920 (1995) ...........................................8

*Gulf Oil Co. v. Bernard*
452 U.S. 89 (1981) ..........................................................................11

Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.
473 U.S. 614, 624, 105 S.Ct. 3346, (1985) ......................................8

United Steelworkers of America v. Warrior and Gulf Navigation Company.
363 U.S. 80 (1960) ............................................................................8

## California State Supreme Court Cases

*Armendariz v. Found. Health Psychcare Servs.*, Inc.
24 Cal.4th 83 (2000) ........................................................................9

*Cruise v. Kroger*
233 Cal. App.4th 390 (2015) ...........................................................11

*Gentry v. Superior Court*
42 Cal. 4th 443 (Cal. 2007) .............................................................11

*Little v. Auto Stiegler, Inc.*
29 Cal. 4th 1064 (Cal. 2003) ...........................................................11

*Long v. Fidelity Water Sys., Inc.*, No. C-97-20118, 2000 WL 989914, at *3 (N.D. Cal.
May 26, 2000) ............................................................................ 10, 16

## State Cases

*A & M Produce Co. v. FMC Corp.*,
135 Cal.App.3d 473 (1982) ............................................................17

*Bayscene Resident Negotiatiors v. Bayscene Mobilehome Park,*
15 CAL APP 4th 119 (1993) ...........................................................17

*Fitz v. NCR Corp.*
    118 CAL APP 4th 702 (2004) ..................................................................17

*Lhotka v. Geographic Expeditions, Inc.*
    181 Cal.App.4th 816 (Ct.App.2010) .................................................... 8, 9

*Rich & Whillock, Inc. v. Ashton Development, Inc.,*
    157 Cal.App.3d 1154 (1984) ..................................................................17

**Federal Cases**

*American Postal Workers Union v. United States Postal Service*
    823 F.2d 466 (11th Cir.1987) ...................................................................8

*Bacashihua v. U.S. Postal Serv.*
    859 F.2d 402 (6th Cir. 1988) ............................................................ 8, 10

*Balasanyan v. Nordstrom, Inc.*
    Nos. 11-cv-2609-JM-WMC, 10-cv-2671-JM-WMC, 2012 WL 760566 (S.D. Cal.
    Mar. 8, 2012) ............................................................................ 9, 12, 14

*Bilbrey v. Cingular Wireles, L.L.C.*
    164 P.3d 131 (Okla. 2007) ............................................................ 10, 16

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*
    622 F.3d 996 (9th Cir.2010) .....................................................................9

*Circuit City Stores, Inc. v. Mantor,*
    335 F3d 1101(9th Cir. 2003) ..................................................................17

*Dillworth v. Case Farm Processing, Inc.*
    No. 5:08cv1694, 2009 WL 2766991 (N.D. Ohio Aug. 27, 2009).................................16

*Ferguson v. Countrywide Credit Indus., Inc.,*
    298 F.3d 778 (9th Cir.2002) ...................................................................17

*Harden v. Roadway Package Systems, Inc.,*
    249 F3d 1137 (9th Cir. 2001) ........................................................ 8, 10, 11

*Impervious Paint Indus., Inc., v. Ashland Oil*
    508 F. Supp. 720 (W.D. Ky. 1981) ...........................................................12

*In re Currency Conversion Fee Antitrust Litig.*
    361 F. Supp. 2d 237 (S.D.N.Y. 2005) .............................................. 9, 12, 15

*In re Sch. Asbestos Litig.v. Lake Asbestos of Quebec, LTD.*
    842 F.2d 671 (3d Cir. 1988) ...................................................................11

*Ingle v. Circuit City Stores, Inc.,*
    328 F.3d 1165 (9th Cir.2003) ............................................................ 8, 17

*Kleiner v. First Nat. Bank of Atlanta*
    751 F.2d 1193 (11th Cir. 1985) ...............................................................12

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

*O'Connor v. Uber Technologies, Inc.*
    No. C-13-3826 EMC, 2013 WL 6407583 (N.D. Cal. Dec. 6, 2013) ...........................15

*Payne v. The Goodyear Tire & Rubber Co.*
    207 F.R.D. 16 (D. Mass. 2002) ...................................................................13

*Rankin v. Bd. of Educ. of the Wichita Pub. Sch.*
    U.S.D. 259, 174 F.R.D. 695 (D. Kan. 1997) ...................................................13

*Taran v. Blue Cross Blue Shield of Florida*
    685 So.2d 1004 (Fla. Ct. App. 1997) ..........................................................13

*Tenney Engineering, Inc. v. United Electrical Radio & Machine Workers of America,*
    *Local 437*, 207 F.2d 450 (3d Cir.1953) ..........................................................8

Walthour v. Chipio Windshield Repair, LLC
    No. 1:12-CV-1491-AT, 2013 WL 1932655 (N.D. Ga. Feb. 27, 2013) .........................16

**State Statutes**

9 Cal. Civ.Code § 1670.5 ...................................................................................17

California Labor Code section 229 .......................................................................11

**Federal Statutes**

Federal Rules of Civil Procedure 23(d) .................................................................14

29 U.S.C. § 216(b) ..........................................................................................16

9 U.S.C. § 2.2 ................................................................................................8

9 USC §§1,2 ...................................................................................................7

Graham**Hollis** APC
3555 Fifth Avenue
San Diego, California 92103

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION
AND TO STAY ALL JUDICIAL PROCEEDINGS

## PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Jessica Jimenez and Orlando Mijos (collectively "Plaintiffs") respectfully submit the following Memorandum of Points and Authorities in Support of Plaintiffs' Opposition to Defendants' Motion to Compel Arbitration of Plaintiff Mijos and to Stay all Judicial Proceedings.

## I.    <u>INTRODUCTION</u>

Defendants' contentions regarding the enforceability of the Arbitration Agreement signed by Plaintiff Mijos lack any merit. The arbitration agreement Defendants presented into evidence in an attempt to show (wrongly) this Court lacks jurisdiction over Plaintiff Mijos's claims its clearly unenforceable from its face because: (1) it was signed by a putative class member, (2) after the filing of this Class Action and PAGA Representative Complaint, (3) while this Class action was pending, (4) without giving any notice to Plaintiff Mijos of the pendency of the current litigation, (5) without explaining the effect of the class action waiver, (6) without giving Plaintiff Mijos the opportunity to opt-out of the arbitration clause, and (5) with the purpose to deprive the class members, including Mijos, of their right to participate in this Class action. Defendants' attempt to force a class action waiver clause upon a class members already part of this litigation constitute an improper communications with the class that should not be allowed by this Court.

## II.    <u>BRIEF PROCEDURAL HISTORY</u>

Defendants originally removed this case to the U.S. District Court, Northern District of California on August 9, 2010. (Declaration of Vilmarie Cordero in Support of Plaintiffs' Opposition to Defendants Motion to Compel Arbitration and to Stay Proceedings ("Cordero Dec.") ¶ 7) On December 6, 2010, and before the parties attended the Initial Status Conference, the case was reassigned to the Oakland division, and all matter scheduled for hearing, including the Initial Status Conference, were vacated and taken off the Court's calendar. (*Id. at* ¶ 8). On March 11, 2011, the U.S. District Court ordered the parties to show cause why the Court should not remand the case to state court for lack of removal jurisdiction.  The district court further vacated all case management conferences and held in abeyance the deadline for Defendants to

file a response to the Complaint until resolution of the U.S. District Court's jurisdiction. (*Id. at* ¶9)  The U.S. District Court did not resolve the question of removal jurisdiction until April 8, 2013.  Therefore, for reasons outside of Plaintiff's control, this case remained in Federal Court for approximately 2 years and 8 months (from August 9, 2010 to April 8, 2013), effectively stayed, as the parties were completely precluded from conducting any type of discovery, pursuant to Federal Rules of Civil Procedure, Rule 26(d)(1). (*Id. at.* ¶ 11).

The parties entered into a Stipulated Protective Order on March 26, 2014 for the disclosure of putative class members' contact information.  However, the parties could not reach an agreement as to the content of the opt-out notice until June 5, 2014, and the Claims Administrator did not complete the service of the notice to putative class members until June 9, 2014. (*Id.* at ¶ 13; Ex. 2) Therefore, up to June 9, 2014, Plaintiff could not contact putative class members and putative class members did not have any notice of the pendency of this class action and representative action.

On or approximately December 4, 2014, and after Plaintiff Jimenez filed two motions to compel discovery, Plaintiff received a sample of the putative class members' time and pay records from Defendants consisting of thousands of documents.  Thus, from approximately August 23, 2013 to December 4, 2014, Plaintiff did not have an opportunity to completely evaluate the class claims alleged in the FAC.   As a result of our analysis, Plaintiff Jimenez discovered Defendants did not pay putative class members for all overtime hours worked on their seventh consecutive day of work and all overtime wages earned during the established workweek. Soon after concluding the analysis, and in light of the new information discovered, Plaintiff's counsel contacted the court and set the hearing on Plaintiff's motion for leave to file a Second Amended Complaint (SAC) on the first available date: April 29, 2015. The SAC does not allege any new cause of action not previously alleged and made part of the Original Complaint and the FAC.  Plaintiffs' Second Amended Complaint includes the exact same causes of action alleged in the operative Complaint: seven causes of action in total. (See Exhibit 3 to Cordero Dec.).

/ / /

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

On April 16, 2015, Defendants filed an Opposition to Plaintiff's Motion for Leave to File a Second Amended Complaint. In their Opposition, Defendants clearly contend the Class Action waiver Plaintiff Mijos signed while this ligation was pending **had the purpose of precluding Mr. Mijos ability to act as a class representative on *any action* and waived Mr. Mijos ability to participate in the current pending litigation as a class member**. (Cordero Dec. ¶ 22) Defendants further argued at the hearing on Plaintiff's motion for leave to amend, Plaintiff Mijos had already signed an arbitration agreement, and therefore, he could not be included in the SAC as a class representative *at all*. (*Id.* at ¶25).

Now, and contrary to their previous representations to the Court, Defendants argue the class action waiver Mr. Mijos signed is only applicable to Mr. Mijos "*newly raised claims*" (which there are really none), and as part of their Motion to Compel Arbitration Defendants agree Plaintiff Mijos could serve as a Class Representative, even though the Class Action waiver Plaintiff Mijos signed specifically states "*The Menzies Aviation ADR Policy includes a waiver of the ability to participate in a class action or representative action*" and nowhere in the ADR Policy Defendants' exclude the current pending litigation from the class action waiver. (See Defendants' Motion to Compel Arbitration, p. 12, lines 4-15, Dkt. #11, at page 9 of 16; Ex. A and B to Ms. Bazerkanian Declaration, Dkt. #11-2, page 2-4; Dkt. # 11-3, page1-2).

## III.    STATEMENT FACTS

### A.    THE SFO NON-EXEMPT CLASS

The original Complaint in this case was filed in June 2, 2010 and alleged Labor Code violations for Failure to Pay Overtime and Private Attorney General Act ("PAGA") penalties on behalf of the following class:

> "The **SFO Non-Exempt Class** is defined as follows:
> All current and former non-exempt employees of MENZIES AVIATION, INC. and/or MENZIES AVIATION GROUP (USA), INC., employed at the San Francisco International Airport at any time within the four years preceding the filing of the complaint to the present." (Cordero Dec. ¶¶4-5; Complaint, page 11, ¶42. (a), attached as Exhibit 1 to the Cordero Dec.)

Thus, all current and former non-exempt employees of Menzies working at the San Francisco International Airport ("SFO"), including Plaintiff Mijos, were putative class members in this litigation since **June 2, 2010**. Plaintiff filed a First Amended Complaint on July 17, 2013. (Cordero Dec. ¶ 12). The FAC limited the California Labor Code claims alleged on behalf of the SFO Non-Exempt Class to those hourly employees at the San Francisco Airport that worked at least one shift that ended between 11:54 p.m. and 5:28 a.m. and/or worked at least one shift that started between 1:35 a.m. and 5:28 a.m. at any time from June 2, 2006 to the present.

The Second Amended Complaint was served and file on May 1, 2015. The main effect of the SAC was to add a new class representative, Orlando Mijos, to the classes *already pending* in the current litigation; to add a subclass class of the SFO Non-Exempt Class who already had claims for overtime wages ("the Overtime Class"); and to clarify the subclasses (Waiting Time Penalties subclasses). (See Ex. 3 to Cordero Dec.) The SAC does not allege any new cause of action not previously alleged and made part of the Original Complaint and the FAC. The SAC alleges the exact same putative SFO Non-Exempt Class, and adds a subclass of employees that are part of the SFO Non-Exempt Class because they worked one or more periods consisting of consecutive hours that extended beyond midnight (12:00 a.m.) into to the next calendar day at any time from June 2, 2006 to the present. Therefore, neither the FAC nor the SAC had the effect of adding any *new* causes of action or putative class members.

## B. DEFENDANTS MENZIES AVIATION

Defendants Menzies Aviation are global aviation support companies based in the United Kingdom that provide ground-handling, cargo handling, aircraft maintenance, and aviation related services in several locations around the world, including the San Francisco International Airport. For example, Menzies provides aviation ground support to passenger and cargo airlines at airports throughout the United States, including the SFO, including, but not limited to, servicing passenger aircraft, baggage loading and off-loading, re-fueling, passenger cabin cleaning and taxiing escort. Menzies Aviation is therefore a company engaged in foreign and interstate commerce, and their employees are directly engaged in interstate commerce.

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

4
CASE NO. 15-CV-02392-WHO
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND
TO STAY ALL JUDICIAL PROCEEDINGS

## C. PLAINTIFF MIJOS IS AND WAS A PUTATIVE CLASS MEMBER PRIOR TO SIGNING THE ARBITRATION AGREEMENT

Class representative Orlando Mijos worked for Menzies as a ramp agent and a non-exempt employee at the San Francisco International Airport (SFO) from December 2007 until separation of his employment, and he worked shifts that ended between 11:54 p.m. and 5:28 a.m. and worked at least one shift that started between 1:35 a.m. and 5:28. (See Declaration of Orlando Mijos in Support of Plaintiffs' Opposition to Defendants' Motion to Compel and to Stay Proceedings filed concurrently herewith ("Mijos Dec."), ¶¶2-5.) Plaintiff Mijos worked shifts consisting of consecutive hours that extended beyond midnight (12:00 a.m.) into to the next calendar day, and he also worked more than eight hours in a workday, more than forty hours in a workweek, and more than seventh consecutive days in a workweek during his employment for Menzies. (Mijos Dec. ¶¶4-5)

Thus, Orlando Mijos was a putative class member since the beginning of this litigation on **June 2, 2010**, and he continues to be a putative class member to the present. On or around October 28, 2011—and while this litigation was still pending in Federal Court—Defendants improperly required Orlando Mijos, (and by admission of Defendants several other putative class members in this case), to sign an arbitration agreement as a condition of continued employment, improperly waiving Plaintiff Mijos' right to participate in a *pending* class action litigation.

Ms. Talin Bazerkanian (or anyone at Menzies) never informed Plaintiff Mijos that Plaintiff Jimenez had started a class action lawsuit against Defendants. (*Id. at* ¶6) Plaintiff Mijos was never informed by anyone at Menzies that he was (and is) a putative class member in the current class action lawsuit, which was pending at all times Mijos was employed by Menzies. (*Id.*). Instead, Plaintiff Mijos' supervisor required Mijos to sign several documents, including Menzies Alternative Dispute Resolution Policy and/or Arbitration Agreement and did not explain to Mijos the content of these documents or the consequences of signing these documents as a putative class member of the present litigation. (*Id. at* ¶7) Plaintiff Mijos signed the documents containing the arbitration agreement because he felt threatened by his supervisor

who told him that unless he was required to sign the documents or would not receive payment of all the monies he believed he was entitled to receive. (*Id. at* ¶¶ 8-9)

Moreover, at no point during Mijos employment, his supervisor or anyone at Menzies explained to him that he had the option of *not* signing the documents that contained the arbitration agreement. (*Id. at* ¶¶12-13). Similarly, and contrary to Ms. Bazerkanian's testimony, no one at Menzies informed Mijos that he could have revoked the arbitration agreement at any point. (*Id. at* ¶¶14-15) In fact, nowhere in the arbitration agreement Menzies give Plaintiff Mijos the option to revoke the agreement unilaterally. (See Exhibit 4 to Cordero Dec.; Ex. B to Bazerkanian Decl.). The arbitration agreement Mijos signed was a condition of his continuing employment with Menzies. Therefore, Ms. Bazerkanian declaration (i.e. ¶2, lines 26) constitute inadmissible hearsay, and lack any probative value as pure speculation. Ms. Bazerkanian's statements contradict both the ADR Policy's and the Arbitration Agreement requiring Menzies' employees to arbitrate all covered disputes and requiring Menzies' employees to execute the arbitration agreement as a "material condition of employment." (Cordero Dec. ¶ 27, Dkt. #11-3, page 1-2).

## D. MENZIES AVIATION ALTERNATIVE DISPUTE RESOLUTION POLICY AND CLASS ACTION WAIVER IS A CONDITION OF EMPLOYMENT

Menzies' ADR Policy starts by informing employees "*Menzies Aviation has implemented this Alternative Dispute Resolution Policy ("ADR Policy").*" (Ex. 4 to Cordero Decl.; Dkt. #11-2, page 1-4) The ADR Policy does not give the employee the option of rejecting the ADR Policy or refusing to enter into the arbitration agreement anywhere in the text of the agreement. In fact, the third paragraph of the ADR Policy specifically states:

"Who is Covered

The ADR Policy is mandatory for all disputes arising between employees and Menzies Aviation except as specifically excluded by the ADR Policy." (Underline in the original). (Ex. 4 to Cordero Decl.; Dkt. #11-2, page 1 of 4)

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY ALL JUDICIAL PROCEEDINGS

Similarly, the "Agreement to be Bound by the Alternative Dispute Resolution Policy" states as follows:

"In consideration of and as a material condition of employment with Menzies Aviation, …it is agreed that the Alternative Dispute Resolution Policy attached hereto…is the exclusive means for resolving Covered Disputes…" (Underline in the original) (Dkt. #11-3, page 1 of 2).

The Class Action Waiver is contained in the second page of the ADR Policy, and states the following:

"The Menzies ADR Policy includes a waiver of the ability to participate in a class action or representative action. By agreeing to be bound by the ADR Policy, you understand and agree this ADR Policy prohibits you from **joining or participating in a class action or representative action, acting as a private attorney general or representative of others, or otherwise consolidating a covered claim with the claims of others**." (Emphasis Added) Dkt. #11-2, p. 2 of 4)

Similarly, the Arbitration Agreement states: "In addition, I understand I am prohibited from ***joining a class action or representative action, acting as a private attorney general or representative of others, or otherwise consolidating a covered claim with the claims of others***." (Emphasis added) (Dkt. #11-3, p. 1 of 2).

## IV.    **LEGAL STANDARD**

Generally, the Federal Arbitration Act ("FAA") governs arbitration in contracts involving interstate or foreign commerce or maritime transactions. (9 USC §§1,2). However, the FAA section 1 specifically exempts from its application certain interstate contracts. Section 1 of the FAA states, in relevant part: "*[n]othing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.*" 9 U.S.C. § 1. The US Supreme Court has interpreted the exclusion of "workers engaged in foreign commerce" to mean only transportation workers. All other employment contracts affecting commerce are subject to the FAA. *See Circuit City Stores, Inc. v. Adams*, 532 US 105, 118 (2001). "*Transportation workers*" means workers engaged in the movement

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY ALL JUDICIAL PROCEEDINGS

of goods in interstate commerce. *See Harden v. Roadway Package Systems, Inc.*, 249 F3d 1137, 1140 (9th Cir. 2001). The employee does not need to be personally engaged in interstate commerce for the exclusion to apply, but be part of the class of workers engaged in interstate commerce. *Bacashihua v. U.S. Postal Serv.,* 859 F.2d 402, 405 (6th Cir. 1988), citing *Tenney Engineering, Inc. v. United Electrical Radio & Machine Workers of America, Local 437*, 207 F.2d 450, 452–53 (3d Cir.1953); *American Postal Workers Union v. United States Postal Service*, 823 F.2d 466, 473 (11th Cir.1987).

If the arbitration contract is not excluded under section 1, under Section 2 of the Federal Arbitration Act, arbitration agreements shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C. § 2.2. The Supreme Court of the United States has interpreted this language to mean that arbitration agreements may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability without contravening section 2. *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1746 (2011). Therefore, to evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts. *Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165, 1170 (9th Cir.2003). Courts must "remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 624, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). To determine the merit of contractual defenses, courts "apply ordinary state-law principles that govern the formation of contracts."7 *First Options of Chi.,* 514 U.S. at 944, 115 S.Ct. 1920 (1995). The United States Supreme Court has interpreted this language to mean that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 686–87 (1996).

Unconscionability means the absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. *Lhotka v. Geographic Expeditions, Inc.*, 181 Cal.App.4th 816, 821 (Ct.App.2010). Accordingly,

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

unconscionability has both a procedural and a substantive element. *Id.* Procedural unconscionability occurs where a contract or clause involves oppression, consisting of a lack of negotiation and meaningful choice, or surprise, such as where the term at issue is hidden within a wordy document. *Id.* California law treats contracts of adhesion, or at least terms over which a party of lesser bargaining power had no opportunity to negotiate, as procedurally unconscionable to at least some degree. *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir.2010). Substantive unconscionability occurs where the provision at issue reallocates risks in an objectively unreasonable or unexpected manner. *Lhotka*, 181 Cal.App.4th at 821. Substantive unconscionability focuses on the one-sidedness or overly harsh effect of the contract term or clause. *Id.* at 824–25 (citation omitted). Both procedural and substantive unconscionability must be found before a term will be deemed unenforceable, but both need not be present to the same degree. Rather, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa. *Armendariz v. Found. Health Psychcare Servs.*, Inc., 24 Cal.4th 83, 114 (2000).

Both California courts and federal courts have invalidated the entire arbitration agreement (including any class waiver clause contained within) entered into by putative class members, while the class action is pending, and without proper notice of the pendency of the class action and/or without the opportunity to opt out of the arbitration agreement. *Balasanyan v. Nordstrom, Inc.*, Nos. 11-cv-2609-JM-WMC, 10-cv-2671-JM-WMC, 2012 WL 760566 (S.D. Cal. Mar. 8, 2012) (employer's failure to mention the pending lawsuit when soliciting the revised arbitration agreement from potential opt-in class members was improper and rendered the new agreement invalid as to those class members). Similarly, the imposition of an arbitration clause on putative class members after the commencement of a class action or collective action renders the agreement unconscionable or otherwise unenforceable. *See In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 249 (S.D.N.Y. 2005) (arbitration clauses imposed by defendant after commencement of class action were unenforceable as unconscionable); *Billingsley v. Citi Trends, Inc.*, No. 4:12-CV-0627-KOB,

2013 WL 2350163, at *12 (N.D. Ala. May 29, 2013) (refusing to enforce collective action waiver against opt-ins imposed on employees in private meetings after FLSA collective action was filed as unconscionable *and* as a misleading communication); *Bilbrey v. Cingular Wireless, L.L.C.*, 164 P.3d 131, 134 (Okla. 2007) (arbitration clause unconscionable where it was imposed on class members after class action complaint had been filed). *See also Long v. Fidelity Water Sys., Inc.*, No. C-97-20118, 2000 WL 989914, at *3 (N.D. Cal. May 26, 2000) (declining to enforce arbitration clause added to credit card contracts nearly one year after class action was filed because defendants "gave no notice to [the plaintiff] that if he opted for the arbitration provision, he could not participate in the pending class action").

## V. LEGAL ARGUMENTS:

### A. THIS COURT SHOULD NOT COMPEL ARBITRATION BECAUSE STATE LAW PRECLUDES THE ENFORCEMENT OF THE CLASS ACTION WAIVER SIGNED BY PLAINTIFF MIJOS AND DEFENDANTS FAILED TO MEET THEIR BURDEN OF PROVING THE APPLICABILITY OF THE FAA TO PLAINTIFF MIJOS

The federal district courts lack the authority to compel arbitration in cases like this one where the FAA specifically exempt its application to transportation workers, like Mijos, who are engaged in interstate commerce, and Defendants have not shown state law compels a similar result. *Harden, supra,* 249 F3d at 1140; *Circuit City Stores, Inc.*, 532 US at 118. Mijos contracted—as a Ramp agent with Menzies—to perform transportation services to passenger, ground-handling services, and cargo handling services, including loading and unloading of cargo, to passenger and cargo airlines at the SFO. Therefore, Mijos was engaged in interstate commerce specifically exempt from the application of the FAA. *Id.* Even if Plaintiff Mijos did not personally engaged in interstate commerce, the FAA §1 exclusion applies. *Bacashihua, supra,* 859 F.2d at 405. Defendants' Motion to Compel Arbitration does not address FAA §1 exclusion, and Defendants did not provide any evidence in support of the fact that Plaintiff Mijos did not belong to a *class of workers engaged in foreign or interstate commerce.*

/ / /

California law applies in the absence of applicable Federal law. *Harden, supra,* 249 F3d at 1140. Similarly, the FAA does not preempt the application of California Labor Code § 229, which specifically authorizes lawsuits like this one for unpaid wages "*without regard to the existence of any private agreement to arbitrate.*" Cal. Lab. Code section 229; *see also Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1079-1080 (Cal. 2003), (the California Supreme Court recognized that some arbitration agreements and proceedings may harbor terms, conditions and practices that undermine the vindication of unwaivable rights). Similarly, the Supreme Court holding in *Concepcion* will result inapplicable to the facts of this case unless Defendants meet their burden of proving the arbitration agreement *is* covered under the FAA. *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. at 1746. *Gentry v. Superior Court*, 42 Cal. 4th 443 (Cal. 2007), governs the facts of this case because Defendants have failed to meet this burden.

Defendants only cite *Cruise v. Kroger,* 233 Cal. App.4th 390, in support of their contention that this Court should compel the arbitration of Plaintiff Mijos claims in the present litigation. However, the facts of this case are clearly distinguishable from the facts alleged by the plaintiff in *Cruise. Id.* at 392-94. Specifically, and different from the *Cruise* litigation, the present class action involves unwaivable rights of Menzies' employees to overtime pay, and involves a class action and representative action waiver that will have the effect of undermining the ability of Menzies employees, including Plaintiff Mijos, to *vindicate their statutory right to overtime pay*, and therefore, unenforceable under California law. *Gentry, supra,* 42 Cal. 4th at 466.

**B. THIS COURT SHOULD NOT COMPEL ARBITRATION BECAUSE UNDER BOTH STATE AND FEDERAL LAW THE CLASS ACTION WAIVER SIGNED BY PLAINTIFF MIJOS IS UNENFORCEABLE**

Defendants' ex parte communications with potential class members are subject to this court's supervision to ensure their fairness and accuracy. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981); *In re Sch. Asbestos Litig.*, 842 F.2d 671, 680 (3d Cir. 1988). Under this authority, courts have consistently refused to enforce arbitration clauses imposed on potential class members that give no notice of, or misleading information about, pending litigation on the basis

that they are improper communications with putative class members. *See, e.g., Balasanyan v. Nordstrom, Inc., Nos.* 11-cv-2609-JM-WMC, 10-cv-2671-JM-WMC, 2012 WL 760566, at *4 (S.D. Cal. Mar. 8, 2012) (employer's failure to mention the pending lawsuit when soliciting revised arbitration agreements from potential opt-in class members was improper and rendered the new agreement invalid as to those class members); *Williams v. Securitas Sec. Serv. USA, Inc., No.* 10-7181, 2011 WL 2713741, at *2-3 (E.D. Pa. July 13, 2011); Carnegie v. H&R Block, Inc., 687 N.Y.S.2d 528, 532 (N.Y. Sup. Ct. 1999) (arbitration agreements with class waivers are not permissible where putative class members do not receive notice of the action's pendency and the effect of the waiver, as well as the opportunity to choose whether they wish to arbitrate their claims individually or proceed on a class-wide basis).

**1.      The Class Action and Representative Action Waiver is Void and/or Unenforceable Because It Fails to Disclose Putative Class Members the Pending Litigation and Does Not Provide any Mechanism to Opt Out**

From the date on which a class action complaint is filed, "putative class members' rights in th[e] litigation [are] protected"—including the right to determine for oneself whether to participate in, or withdraw from, the class action. *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 249 (S.D.N.Y. 2005) (listing cases affirming this principle). The decision to join in or opt out of a class action must rest solely with each individual putative class member, and it is the duty of the courts to ensure these decisions are "free and unfettered." *Impervious Paint Indus., Inc., v. Ashland Oil*, 508 F. Supp. 720, 723 (W.D. Ky. 1981). Thus, courts should closely monitor communication between a defendant and putative class members during the course of litigation, so that these communications do not discourage or outright deny a putative class member of the right to join in the class action "on the basis of a one-sided presentation of the facts, without opportunity for rebuttal." *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193,1203 (11th Cir. 1985). If the proposed communication is "***coercive, misleading, or an attempt to affect a class member's decision to participate in the litigation***," it must not be permitted. *Carnegie v. H&R Block, Inc.*, 687 N.Y.S.2d 528, 531 (N.Y. Sup. Ct. 1999).

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

It is not automatically abusive for a defendant to communicate with class members. Many defendants have an ongoing business relationship with their current customers or employees, and regular communications in the "the ordinary course of business" are not necessarily problematic. *Taran v. Blue Cross Blue Shield of Florida*, 685 So.2d 1004, 1007 (Fla. Ct. App. 1997). The test is whether the communication could influence the rights of the class members to participate in the pending litigation. For instance, courts have permitted defendants to contact class members for purposes such as correcting billing errors. *Taran*, 685 So.2d at 1007; *see also Payne v. The Goodyear Tire & Rubber Co.*, 207 F.R.D. 16, 20-21 (D. Mass. 2002) (permitting defendant's offer to inspect an allegedly defective product at no cost where it was clear that the contact did not "pressur[e] plaintiffs to opt out of the litigation or covertly rob[] plaintiffs of their opportunity to participate in the instant litigation"); *Rankin v. Bd. of Educ. of the Wichita Pub. Sch.*, U.S.D. 259, 174 F.R.D. 695, 697 (D. Kan. 1997) (letter from defendant school district to class members offering summer language classes was not abusive, because "[a]ny prospective member of the class could choose to take advantage of defendants' offer and still choose to participate in this action should the class be certified").

In *Williams*, after a FLSA collective action had already been filed, the defendant imposed an arbitration agreement on all of its employees that included a class and collective action waiver. The agreement applied to any dispute arising out of employment, including pending class actions in which the employee was "not a plaintiff or part of a certified class." 2011 WL 2713741, at *1. The agreement listed five existing representative actions in which the defendant was named that would be covered by the agreement, but did not disclose the nature of the actions or that, by failing to opt out of the agreement, the employee's ability to participate in the pending cases could be affected. *Id.* The plaintiffs from one of the pending collective actions filed an emergency motion for a protective order and corrective mailing to address the defendant's "improper communications with absent class members." *Id.* The court refused to enforce the agreement as to employees covered by the *Williams* case because it represented a confusing and unfair communication with potential opt-in plaintiffs. *Id.* In so holding, the court emphasized that the court has broad authority to enter appropriate orders governing the conduct

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

of counsel and the parties as it pertains to notices mailed to potential plaintiffs. *Id.* at *2. The court emphasized that, although the agreement mentioned the pending lawsuit, **it did not explain its nature**. *Id.* at *3. It concluded that the "Agreement stands the concept of fair dealing on its head and is designed to thwart employees of Securitas from participating in this lawsuit." *Id.* at *2.

In *Balasanyan*, the court denied an employer's motion to compel individual arbitration based on a new arbitration agreement that included a class action waiver provision two months after the proposed class action complaint was filed.[1] In refusing to enforce the class action waiver, the court noted that it possessed the authority to control communications in a class action and explained that its supervision serves the important purpose of "prevent[ing] improper contacts that could jeopardize the rights of the class members" and that this supervision "cannot be abdicated." *Id.* at *3. Indeed, "[t]o allow defendants to induce putative class members into forfeiting their rights by making them an offer and failing to disclose the existence of litigation would create an incentive to engage in misleading behavior." *Id.* The court explained:

> The imposition of the agreement combined with Nordstrom's failure to disclose the existence of the litigation is sufficient for the court to find an improper communication. However, the court also notes that the existing confusion was likely buttressed by the circumstances surrounding imposition of the new agreement. Many, and perhaps most of the putative class members were likely unaware of the pending litigation, and therefore may well have not fully appreciated the rights they were purportedly forfeiting by "accepting" the agreement . . . .

*Id.* at *4, n.3.

Similarly, under the power of the Federal Courts to control class action litigation pursuant to Fed.R.Civ.P. 23(d), the District Court for the Northern District of California, Hon. Edward M. Chen presiding, held that defendants' communications with the putative class members of the class, while the class action was pending, by sending a Licensing Agreement containing an arbitration agreement that included an express clause giving the putative class members 30-days to opt-out of the arbitration provision was unenforceable because the communication was

---

[1] The court declined to reach whether the class action waiver was valid under *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011) because judicial control of class communications is not based in state law (which *Concepcion* found preempted by the FAA), but federal law. *Id.* at *2 & n.1.

CASE NO. 15-CV-02392-WHO

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY ALL JUDICIAL PROCEEDINGS

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

misleading and defendants made no effort to inform drivers of the legal consequences of the arbitration provision. *O'Connor v. Uber Technologies, Inc.*, No. C-13-3826 EMC, 2013 WL 6407583, at *6 (N.D. Cal. Dec. 6, 2013) reconsideration denied, No. C-13-3826 EMC, 2014 WL 1760314 (N.D. Cal. May 2, 2014). Moreover, the district court for the Northern District held the fact that the opt-out clause—which allowed putative class members to opt out of the arbitration agreement within 30-days of receiving the notice—was buried in the agreement, made the arbitration provision unenforceable because it did not really gave the class members the option to opt out of the agreement and therefore the agreement "*runs a substantial risk of interfering with the rights of Uber drivers under Rule 23.*" *Id.*, No. C-13-3826 EMC, 2013 WL 6407583, at *7.

Similar to the plaintiffs in *O'Connor,* Menzies did not inform their employees, including Mijos that they were putative class members in a class action and representative litigation, and Menzies made no effort to inform the employees of the consequences of signing a class action waiver while the instant class action was pending. Furthermore, Menzies arbitration agreement ***does not give Plaintiff Mijos (or any other putative class member) the opportunity to opt-out of the arbitration clause*** and its execution is a "material condition of employment with Menzies Aviation " (Dkt. #11-3, page 1 of 2).

>    2.   **The Imposition of An Arbitration Clause and a Class Action and Representative Action Waiver Renders the Arbitration Agreement and the Class Action Waiver Unconscionable Because it Fails to Disclose Putative Class Members the Pending Litigation and Mijos's Right to Proceed Collectively Is Unwaivable**

Similarly, and for the same reasons discussed in the previous section, the imposition of an arbitration clause on putative class members after the commencement of a class action or collective action renders the agreement unconscionable or otherwise unenforceable. *See In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 249 (S.D.N.Y. 2005) (arbitration clauses imposed by defendant after commencement of class action were unenforceable as unconscionable); Billingsley v. Citi Trends, Inc., No. 4:12-CV-0627-KOB,

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY ALL JUDICIAL PROCEEDINGS

1    2013 WL 2350163, at *12 (N.D. Ala. May 29, 2013) (refusing to enforce collective action

2    waiver against opt-ins imposed on employees in private meetings after FLSA collective action

3    was filed as unconscionable and as a misleading communication); *Bilbrey v. Cingular Wireless,*

4    *L.L.C.*, 164 P.3d 131, 134 (Okla. 2007) (arbitration clause unconscionable where it was imposed

5    on class members after class action complaint had been filed).  See also *Long v. Fidelity Water*

6    *Sys., Inc.*, No. C-97-20118, 2000 WL 989914, at *3 (N.D. Cal. May 26, 2000) (declining to

7    enforce arbitration clause added to credit card contracts nearly one year after class action was

8    filed because defendants "gave no notice to [the plaintiff] that if he opted for the arbitration

9    provision, he could not participate in the pending class action").

10        Moreover, Section 216(b) specifically refers to "[t]he right provided by this subsection to

11   bring an action by or on behalf of an employee, and the right of any employee to become a party

12   plaintiff to any such action."  29 U.S.C. § 216(b).  Courts have held that the statutory right to

13   proceed collectively under Section 16(b) of the FLSA cannot be waived by private agreement.

14   S*ee Dillworth v. Case Farm Processing, Inc*., No. 5:08cv1694, 2009 WL 2766991, at *6 (N.D.

15   Ohio Aug. 27, 2009) ("FLSA's opt-in requirement creates substantive rights that cannot be

16   abridged"); *Walthour v. Chipio Windshield Repair, LLC*, No. 1:12-CV-1491-AT, 2013 WL

17   1932655 (N.D. Ga. Feb. 27, 2013) (finding persuasive authority to support the plaintiff's

18   "assertion [] that the right to proceed collectively, either in a judicial forum or in arbitration, is a

19   substantive right afforded by the FLSA").

20        In this case, Menzies ADR Policy specifically states "I am prohibited from ***joining a***

21   ***class action or representative action, acting as a private attorney general or representative of***

22   ***others, or otherwise consolidating a covered claim with the claims of others***." (Dkt. #11-3, p. 1

23   of 2).  Thus, Menzies ADR Policy and Arbitration Agreement impermissibly strip away Mr.

24   Mijos' substantive rights under 29 U.S.C. § 216(b) and, therefore, cannot be enforced.

25        **3.    The Agreement Is Void and/or Unenforceable Because It Is Unconscionable**

26             **as It Was Entered under Duress**

27        Federal law provides that arbitration agreements generally "shall be valid, irrevocable,

28   and enforceable" except when grounds "exist at law or in equity for the revocation of any

contract." 9 U.S.C. § 2 (2002); *Ingle*, 328 F.3d at 1170. But federal law "does not supplant state law governing the unconscionability of adhesive contracts." *Ingle*, 328 F.3d at 1174 n. 10. In California, courts may refuse to enforce an arbitration agreement if it is unconscionable. 9 Cal. Civ.Code § 1670.5. Unconscionability exists when one party lacks meaningful choice in entering a contract or negotiating its terms and the terms are unreasonably favorable to the other party. *Ingle*, 328 F.3d at 1170; *A & M Produce Co. v. FMC Corp*., 135 Cal.App.3d 473, 486, 186 Cal.Rptr. 114 (1982). Accordingly, a contract to arbitrate is unenforceable under the doctrine of unconscionability when there is "both a procedural and substantive element of unconscionability." *Ferguson v. Countrywide Credit Indus., Inc*., 298 F.3d 778, 783 (9th Cir.2002). At a minimum, a party must have reasonable notice of his/her opportunity to negotiate or reject the terms of a contract, and an actual, meaningful, and reasonable choice to exercise that discretion. *Circuit City Stores, Inc*., supra, 335 F3d at 1106.

Duress renders an arbitration agreement unenforceable. *Bayscene Resident Negotiatiors v. Bayscene Mobilehome Park* 15 Cal. App. 4th 119, 128-129, (1993). The requirements of the defense of duress are: (1) a wrongful act and (2) no reasonable alternative but to accept the agreement. As to the wrongful act, a bad faith threat or wrongful act that is sufficiently coercive to cause a reasonable prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure. Generally, economic duress is present only when the threatened party lacks a reasonable alternative to yielding to the threat. *Rich & Whillock, Inc. v. Ashton Development, Inc.,* supra, 157 Cal.App.3d. 1154, 1158 (1984) "The determination of whether there is a reasonable alternative is made by ascertaining as a question of fact whether a reasonably prudent person would follow the alternative course. *Id.*

California courts have refused to enforce arbitration agreements when employer gave an opt-out form by which he could elect not to be bound by the arbitration agreement but (1) employer pressured him not to opt out and (2) threatened to terminate him if he did so. *Circuit City Stores, Inc. v. Mantor* (9th Cir. 2003) 335 F3d 1101, 1106. *See also Fitz v. NCR Corp.* (2004) 118 CA4th 702, 722 (arbitration agreement unconscionable where employee had no opportunity to negotiate agreement and would have lost her job of 14 years if she had not agreed

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

to it). The arbitration agreement was procedurally unconscionable: The fact that the employer pressured and even threatened the employee with termination demonstrates that he had no meaningful opportunity to opt out of the program. *Id.*

In this case, Plaintiff Mijos did not have a meaningful choice but to enter into and execute Menzies' ADR Policy because his supervisor threatened him with not paying him all his wages and pressure him into signing the agreement. Moreover, Plaintiff Mijos has shown both procedural and substantial unconscionability in this case. Specifically, Plaintiff Mijos has shown: (1) the employer pressured him to sign the agreement, (2) Menzies threatened his ability to continue employment if he did not sign the agreement, (3) Plaintiff lack any bargaining power, and (4) Menzies did not give him the opportunity to opt-out of the agreement. Plaintiff Mijos has shown the existence of substantive unconscionability by showing Menzies' arbitration agreement had the purpose of precluding Mr. Mijos ability to act as a class representative on *any action* and waived Mr. Mijos abililty to participate in the current pending litigation as a class member without receiving any compensation (consideration) or even receiving notice of the pendency of this action. Menzies is the only party of the agreement that stands to benefit from the arbitration agreement and class waiver clause and misinforming putative class members like Plaintiff Mijos regarding their ability to participate and join in this action.

**C.** **THIS COURT SHOULD NOT STAY JUDICIAL PROCEEDINGS BECAUSE DEFENDANTS DID NOT MEET THEIR BURDEN OF PROVING THE APPLICABILITY OF THE FAA AND THE CLASS ACTION WAIVER IS UNENFORCEABLE**

Defendants only argument in support of their request for a stay is under the FAA §3. Nonetheless, Defendants have failed to meet their burden of proof and failed to present any evidence that show Plaintiff Mijos is not excluded from the FAA under §1. 29 U.S.C. §1.

Moreover, for all the reasons stated herein, the arbitration agreement and class waiver clause signed by Plaintiff Mijos is unenforceable, and therefore, does not merit the stay of all judicial proceedings.

**VI.** **CONCLUSION**

CASE NO. 15-CV-02392-WHO

For the foregoing reasons, Plaintiff's respectfully requests Defendants' Motion to Compel Arbitration and to Stay all Judicial Proceedings be denied in its entirety.

Dated: June 19, 2015                    **GRAHAMHOLLIS** APC

                                By:  s/Vilmarie Cordero
                                     Graham S.P. Hollis
                                     Vilmarie Cordero
                                     Attorneys for Plaintiff Jessica Jimenez