UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JESSICA JIMENEZ, et al.,

    Plaintiffs,

v.

MENZIES AVIATION INC, et al.,

    Defendants.

Case No. 15-cv-02392-WHO

**ORDER DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION**

Re: Dkt. No. 11

## INTRODUCTION

During the pendency of this employment class action litigation, defendants Menzies Aviation, Inc. and Menzies Aviation Group (USA), Inc. (collectively, "Menzies") implemented an ADR Policy requiring employees to arbitrate their employment claims. The policy required employees to sign an arbitration agreement, did not advise putative class members about this lawsuit, and failed to offer a reasonable opt-out opportunity. Menzies now argues that a new overtime claim has been alleged in this case after the ADR Policy went into effect and that it must be arbitrated because the putative class members signed an agreement to arbitrate their claims.

The questions raised in Menzies's motion to compel arbitration are whether plaintiffs have stated a new claim or an old claim with an additional theory of recovery, and whether the ADR Policy is unenforceable because it was an improper class communication. I DENY Menzies's motion for two reasons: the overtime claim has always been in this case; and, Menzies could not demand that its employees sign the arbitration agreement without notifying them of the agreement's impact on their participation in this case as a class member and of their right to opt out of the agreement.

## BACKGROUND

Menzies is a British company specializing in global aviation support, such as ground-

handling, cargo handling, aircraft maintenance, and aviation-related services at airports throughout the world, including San Francisco International Airport ("SFO"). SAC ¶ 9 [Dkt. No. 15-4]. Jimenez, a Menzies employee, filed this putative class action in San Francisco Superior Court on June 2, 2010, alleging, among other things, that Menzies failed to pay its SFO non-exempt employees minimum wage and overtime. *See* Compl. [Dkt. No. 15-2]. Menzies removed the case to this District in 2010.

In 2011, while the complaint was pending, Menzies adopted a new ADR Policy for its U.S. locations. Bazerkanian Decl. ¶ 2 [Dkt. No. 11-1]. The policy requires individual arbitration of all employment disputes, including the types of claims raised here, and does not contain an express opt-out provision. *See* ADR Policy at 1-2 [Dkt. No. 11-2]. On October 28, 2011, Mijos signed onto the ADR Policy. *See* ADR Policy [Dkt. No. 11-3]. The agreement states that:

> [I]t is agreed that the Alternative Dispute Resolution Policy attached hereto which provides for final and binding arbitration, is the exclusive means for resolving Covered Disputes as defined in the Alternative Dispute Resolution Policy. No other action may be brought in court or in any other forum. I understand that this Agreement is a waiver of all rights to a civil court action for all disputes relating to my employment, the terms and conditions of my employment and/or the termination of my employment whether brought by me or by Menzies. Only an arbitrator, not a judge or jury, will decide the dispute. In addition, I understand that I am prohibiting [sic] from joining a class action or representative action, acting as a private attorney general or representative of others, or otherwise consolidating a covered claim with the claims of others.

*Id.* at 1 (all emphasis in original).

Covered Disputes are defined as:

> [A]ny dispute arising out of or related to your employment, the terms and conditions of your employment and/or the termination of your employment based on, but not limited to . . . [c]laims alleging failure to compensate for all hours worked, failure to pay overtime, failure to pay minimum wage, failure to reimburse expenses, failure to pay wages upon termination, failure to provide accurate, itemized wage statements, failure to provide meal and/or breaks, entitlement to waiting time penalties and/or other claims involving employee wages, including, but not limited to, claims being brought under the California Labor Code, the applicable wage orders, the Fair Labor Standards Act and any other statutory scheme[.]

ADR Policy at 1-2.

The case was remanded to state court in April 2013. Cordero Decl. ¶¶ 7-11 [Dkt. No. 15-1]. On July 17, 2013, Jimenez filed a first amended complaint ("FAC") following a partial grant of Menzies's demurrer in state court. *Id.* ¶ 12.

On December 14, 2014, Menzies provided Jimenez with documentation about the putative class, including time and payroll records. *Id.* ¶ 14. Jimenez discovered information allegedly entitling a subgroup of putative class members to additional overtime-related damages. *Id.* ¶¶ 15-16. Jimenez was not a part of this group, so she obtained leave to file a SAC adding Mijos, who started at Menzies as a ramp agent in 2007, as the new subgroup's class representative. *Id.* ¶¶ 18, 23. The SAC was filed on May 1, 2015. On May 29, 2015, Menzies again removed the case to this district. Notice of Removal [Dkt. No. 1].

Menzies now moves to compel arbitration of the claims for which Mijos is the class representative, contending that those claims were first alleged in the SAC and are covered by the ADR Policy executed by Mijos. I heard argument on August 5, 2015.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs motions to compel arbitration. 9 U.S.C. §§ 1-14. Under the FAA, "the district court's role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Serv., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). "If the answer is yes to both questions, the court must enforce the agreement." *Id.*

## DISCUSSION

Menzies argues that Mijos asserts new overtime theories in the SAC based on new factual allegations and seeks to compel arbitration of those claims pursuant to the ADR Policy executed by Mijos. Menzies does not seek arbitration of claims that were stated in the complaint before the

3

ADR Policy was executed.[1] Plaintiffs argue that the SAC does not raise new claims and urge me either to invalidate the ADR Policy as unconscionable or to exercise my discretion to regulate class communications and find the policy unenforceable here.

As discussed below, I find that the SAC does not raise new claims. Menzies's issuance of its ADR Policy without advising putative class members of its impact on their class claims constitutes an improper class communication and makes the ADR Policy unenforceable here. I do not address whether the arbitration agreement is unconscionable and unenforceable generally.

## I. THE SECOND AMENDED COMPLAINT DOES NOT RAISE NEW CLAIMS

Menzies argues that Mijos asserts new overtime theories in the SAC based on new factual allegations that were not raised by Jimenez in the prior complaints. It contends that Jimenez's prior overtime allegations were limited to an off-the-clock theory that Menzies employees were not compensated for time spent traveling to and from airport parking lots to the SFO terminal area. It asserts that the prior complaints lacked any factual allegations that would support any other overtime wage claims.

Notably, Menzies does not identify what new factual allegations related to plaintiffs' overtime claims are raised for the first time in the SAC. It is undisputed that there are no new causes of action. Nor, based on my review of the complaints, does the SAC include new factual theories constituting new claims for purposes of this motion, either.

In the original complaint, filed in June 2010, Jimenez alleged that Menzies required class members to park in off-site facilities and ride shuttles to their workplaces, taking over an hour or two each day, but did not compensate the employees for this time. Compl. ¶¶ 20-29. Based on these off-the-clock allegations, Jimenez alleged various causes of action, including failure to pay overtime, on behalf of a SFO Non-Exempt Class defined as:

---

[1] In its opposition to plaintiffs' motion for leave to file the SAC in state court, Menzies argued that the allegedly new claims were futile because the ADR Policy required Mijos to arbitrate *all* employment claims against Menzies. *See* Opp. to SAC Mot. at 8-9 [Dkt. No. 1-12]. Menzies now concedes that the arbitration agreement does not apply to claims that existed before the ADR Policy was executed. I note, however, that on its face, the ADR Policy applies to all claims asserted in this action; it does not expressly exempt claims already pending at the time.

> All current and former non-exempt employees of MENZIES AVIATION, INC. and/or MENZIES AVIATION GROUP (USA), INC., employed at the San Francisco International Airport at any time within the four years preceding the filing of the complaint to the present.

*Id.* ¶ 42(a); *see also id.* ¶¶ 88-103 (cause of action for failure to pay overtime wages). In support of the overtime claim, Jimenez alleged that:

> Menzies violated Labor Code § 510 when they failed to pay Plaintiff and the SFO Non-Exempt Class overtime wages for any and all work performed, including work performed off-the-clock, in excess of 8 hours per day, 40 hours per week, and/or for any and all work performed on the seventh consecutive day in any one work week, by the time set forth by law.

*Id.* ¶ 78.[2]

Menzies issued the ADR Policy in 2011, while the original complaint was still the operative complaint. Given that the original complaint included a class of all current non-exempt employees, all non-exempt employees that executed the ADR Policy and were employed when the complaint was filed in June 2010, including Mijos, were putative class members at the time that they signed the ADR Policy.

The FAC, which was filed in July 2013, narrowed the SFO Non-Exempt Class to employees "who worked at least one shift that ended between 11:54 p.m. and 5:28 a.m. and/or worked at least one shift that started between 1:35 a.m. and 5:28 a.m.," because those are the hours that public transportation was not available to transport employees to or from their parked cars. *See, e.g.,* FAC ¶¶ 50, 74 [Dkt. No. 1-5]. The FAC again alleged that Menzies violated Labor Code § 510 by failing to pay class members for all work performed in excess of 8 hours per day, 40 hours per week, or on the seventh consecutive day in any one work week. *Id.* ¶ 101.

The SAC, filed in May 2015, alleges only causes of action already alleged in the prior complaints, but adds a SFO Overtime Class for certain causes of action, including for the overtime claim. The SFO Overtime Class, for which Mijos is the representative, is defined as:

---

[2] Jimenez also alleged derivative causes of action for failure to timely pay all wages and failure to provide accurate itemized wage statements on behalf of the SFO Non-Exempt Class. Those claims did not rely on off-the-clock allegations.

> All current and former non-exempt employees of MENZIES AVIATION, INC., and/or MENZIES AVIATION GROUP (USA), INC., employed at the San Francisco International Airport who worked at least one shift that according to Defendants' time clock records worked one or more periods consisting of consecutive hours that extended beyond midnight (12:00 a.m.) into the next calendar day at any time from June 2, 2006 to the present.

SAC ¶ 62. The SAC alleges that Menzies violated Labor Code section 510 by failing to pay the SFO Overtime Class (and the previously-alleged SFO Non-Exempt Class) overtime compensation for hours worked in excess of eight hours in a workday, forty hours in a workweek, or on a seventh consecutive work day. SAC ¶ 118.

      This is not a new claim. As noted, the original complaint, which was pending when Mijos executed the ADR Policy and in which Mijos was a putative class member, alleged that Menzies violated Labor Code § 510 by failing to pay overtime compensation for hours worked in excess of eight hours in a workday, forty hours in a workweek, or on a seventh consecutive work day. Compl. ¶ 78. The only distinction between the complaints is that the original complaint arguably assumed that only class members who were forced to travel to and from the workplace without compensation were denied overtime compensation. In contrast, the SAC clarifies that the overtime allegations are not limited to employees that were forced to spend off-the-clock time getting to and from the workplace. But a new theory of recovery does not render the allegations in the SAC a new claim for purposes of this motion.[3] Regardless of how class members allegedly worked the hours constituting the uncompensated overtime—i.e., hours in excess of eight in a day, forty in a week, or on a seventh consecutive day—the claim is the same: that class members were not compensated for that time. *Cf. Shefts v. Petrakis*, 954 F. Supp. 2d 769, 789 (C.D. Ill. 2013) (noting, on a motion to amend, that "the addition of a new theory of recovery, if based on the same

---

[3] Menzies argues that the non-off-the-clock overtime claims in the SAC constitute new claims because those claims were not fairly encompassed in the allegations in the original complaint under a Federal Rule of Civil Procedure 8 notice-pleading analysis. I am not convinced that non-off-the-clock overtime claims were *not* fairly encompassed by the allegations in the original complaint, but, in any event, Menzies provides no authority that the Rule 8 analysis governs whether claims are new in this context.

alleged injury, does not necessarily add a new 'claim'").

Federal and California law favor the adjudication of common claims in a single action. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981) ("Rule 23 expresses a policy in favor of having litigation in which common interests, or common questions of law or fact prevail, disposed of where feasible in a single lawsuit."); *Vasquez v. Super. Ct.*, 4 Cal.3d 800, 808 (1971) (observing the "several salutary by-products" of class actions). "In furtherance of the policy favoring class actions, courts have allowed plaintiffs the opportunity to amend their complaints to redefine the class, or to add new individual plaintiffs, or both, in order to establish a suitable representative, when the named plaintiff has been found inadequate." *Howard Gunty Profit Sharing Plan v. Super. Ct.*, 88 Cal. App. 4th 572, 578 (2001). Permitting Menzies to disrupt plaintiffs' litigation strategy by using its newly implemented ADR Policy to split their claims would hinder that interest.

Accordingly, because the overtime claim has always been in this case, Menzies's motion would be denied even if the ADR Policy were enforceable.

## II. THE ADR POLICY IS UNENFORCEABLE BECAUSE ITS ISSUANCE CONSTITUTED IMPROPER CLASS COMMUNICATION

I also agree with plaintiffs that the ADR Policy is unenforceable because the policy limited class members' rights and the manner in which Menzies issued the policy—not informing Mijos and other putative class members of the pending litigation, not explaining the consequences of agreeing to the policy, and not providing an opt-out procedure—constituted improper class

communication.[4] Menzies does not respond to this point directly because it argues that it only seeks to arbitrate new claims added in the SAC, and therefore that its motion has no bearing on the class claims that existed when the ADR Policy was issued. By arguing that it only seeks to arbitrate claims that were not at issue when the ADR Policy was issued, Menzies recognizes that it would be improper to compel arbitration of claims that existed before the ADR Policy was issued.

As discussed above, I conclude that Menzies is in fact seeking to apply the ADR Policy to claims that existed when it was issued. Because it did not inform the putative members of the effect of the ADR Policy on those claims and give them a reasonable opportunity to opt out, the issuance of the ADR Policy to putative class members constituted improper class communication and the policy is unenforceable.

Federal Rule of Civil Procedure 23(d) provides courts with considerable discretion in regulating defendant communications with putative class members to prevent abuse. *See* FED. R. CIV. P. 23(d); *Gulf Oil*, 452 U.S. at 100 ("Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."); *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 755 (9th Cir. 2010) (district courts may regulate class communications to

---

[4] Plaintiffs argue that they are exempt from the ADR Policy under section 1 of the FAA, which exempts "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. But section 1 only exempts "those workers actually engaged in the movement of goods in interstate commerce." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 112 (2001). Plaintiffs would be exempt if they were drivers delivering goods distributed throughout the country and abroad. *See Harden v. Roadway Package Sys., Inc.*, 249 F.3d 1137, 1140 (9th Cir. 2001). But plaintiffs have not shown how employees providing ground-handling, cargo handling, aircraft maintenance, and aviation-related services fall within this narrow exemption. On the contrary, many courts have found that service employees in the transportation industry do not fall within this exemption. *See, e.g.*, *Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 352-53 (8th Cir. 2005) (customer service representative for general commodities carrier); *Perez v. Globe Airport Sec. Serv., Inc.*, 253 F.3d 1280, 1284 (11th Cir. 2001) (airport security agent who "inspected goods, materials, and people" travelling nationally and globally); *Cole v. Burns Int'l Sec. Serv.*, 105 F.3d 1465, 1470-71 (D.C. Cir. 1997) (security guard at Union Station); *Veliz*, 2004 WL 2452851, at *10 (work of sales representative who delivered goods "more akin to customer service than it is to a warehouse worker, railroad employee or seamen"). Accordingly, plaintiffs have not established that they are exempt under section 1 of the FAA.

prevent "coercive behavior"), *judgment vacated on other grounds*, 132 S.Ct. 74 (2011). Corrective action is appropriate if a class communication so much as "threatens the fairness of the litigation." *Id.* at 756.

Courts routinely exercise their discretion to invalidate or refuse to enforce arbitration agreements implemented while a putative class action is pending if the agreement might interfere with members' rights. *See, e.g.*, *O'Connor v. Uber Tech., Inc.*, No. 13-cv-3826 EMC, 2013 WL 6407583, at *7 (N.D. Cal. Dec. 6, 2013) (invalidating arbitration agreement imposed before class certification where imposing agreement risked interference with putative class members' rights); *Balasanyan v. Nordstrom, Inc.*, 2012 WL 760566, at *1-2, 4 (S.D. Cal. Mar. 8, 2012) (declining to enforce individual arbitration agreement in class action where defendant's implementation of arbitration agreement was an improper class communication); *Williams v. Securitas Sec. Serv. USA, Inc.*, 2011 WL 2713818, at *1 (E.D. Pa. July 13, 2011) (refusing to enforce arbitration agreement imposed during pendency of putative class action); *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 252-54 (S.D.N.Y. 2005) (refusing to enforce arbitration agreement instituted after putative class action was filed as it might mislead class members). I will follow those courts' leads.

Given that the ADR Policy applied to putative class members' existing class claims and that Menzies sought to compel arbitration of a subsection of those claims, there is little question that the ADR Policy risked interference with putative class members' rights. Moreover, it is undisputed that Menzies did not inform Mijos or other putative class members about this action, much less advise them of the ADR Policy's impact on their rights in this case. In addition, Menzies provided no opportunity to opt-out of its new policy, making assent to the ADR Policy a condition of employment.[5] At best, Menzies's implementation of its new arbitration policy raises

---

[5] Menzies disputes Mijos's assertion that his supervisor threatened to withhold his wages if he did not sign the ADR Policy. But the ADR Policy states that it is entered into "[i]n consideration of and as a material condition of employment with Menzies Aviation," evidently making the agreement a condition of employment. Dkt. No. 11-3 (emphasis in original). At a minimum, the ADR Policy gave the impression that it was a condition of employment, confirming the risk of abuse.

the specter of interference with the rights of Mijos and other putative class members; at worst, it was a deliberate effort to undermine pending class litigation. The issuance of the ADR Policy clearly poses a risk to the rights of Mijos and other putative class members. I therefore decline to enforce the arbitration provision to compel arbitration of the claims Mijos brings on behalf of the SFO Overtime Class.

At oral argument, counsel for Menzies argued that finding the ADR Policy unenforceable under these circumstances would effectively bar a company from adopting an arbitration agreement so long as its employees are putative members in a pending class action. That is not accurate. The ADR Policy is unenforceable against the putative class because the manner in which it was issued constituted improper class communication. Had Menzies informed putative class members of the ADR Policy's impact on their class rights and provided clear opt-out opportunities, the potential for abuse and coercive behavior would likely have been ameliorated. In addition, as discussed in Section I above, the ADR Policy is unenforceable here because Menzies seeks to apply the policy to employees that were putative class members, and had pending class claims, before the ADR Policy was issued. This ruling does not affect the enforceability of the ADR Policy as to new employees who are not class members. It is unenforceable against the putative class for the reasons stated.

## CONCLUSION

Menzies's motion to compel arbitration is DENIED. Dkt. No. 11.

**IT IS SO ORDERED**.

Dated: August 17, 2015

WILLIAM H. ORRICK
United States District Judge