UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA JIMENEZ, et al.,<br><br>    Plaintiffs,<br><br>        v.<br><br>MENZIES AVIATION INC, et al.,<br><br>    Defendants. | Case No. 15-cv-02392-WHO<br><br>**ORDER CONCERNING CLASS CERTIFICATION**<br><br>Re: Dkt. No. 39 |

# INTRODUCTION

This case involves the manner in which Menzies Aviation, Inc. and Menzies Aviation Group (USA), Inc. (collectively "Menzies") schedules and compensates its non-exempt San Francisco International Airport ("SFO") employees. On May 4, 2016, I GRANTED plaintiffs Jessica Jimenez and Orlando Mijos's motion to certify three classes (an overtime class, an itemized wage statement class, and a waiting time penalties class) consisting of current and former Menzies employees. Dkt. No. 51. This Order explains why.

# BACKGROUND

Menzies is a global aviation support company based in the United Kingdom that provides cargo handling, aircraft maintenance, and aviation-related services in several locations around the world, including SFO. Second Amended Complaint ("SAC") ¶ 9 [Dkt. No. 1]. All SFO hourly, non-exempt employees have the same payroll schedule. Employees were paid on a weekly basis from June 2006 until approximately the beginning of 2011, when Menzies changed its payroll schedule to bi-weekly. Mot. at 5 [Dkt. No. 39].[1] Menzies designates the workweek as beginning

---

[1] Plaintiffs assert certain background facts in their briefs without providing accurate citations to the record. Because Menzies does not contradict any of the relied upon facts, I use these assertions to set out the factual background of this case. All assertions garnered from the briefs are indicated by citations to the moving papers.

1   on Monday at 12:00am and ending on Sunday at 11:59pm.  Cordero Decl. ¶ 10 [Dkt. No. 39-2].

2   Menzies pays its non-exempt employees at SFO using an individualized workday/workweek schedule.  Cordero Decl. ¶ 10.  An employee's individualized schedule reflects shifts actually worked and may begin and end at different times than those designated.  If a non-exempt employee works a schedule with shifts starting at different times during the workweek, Menzies uses the earliest start time on that employee's schedule as the start time of the workday.  *Id*.  The earliest start time may differ from the time the employee actually began working on Monday, but it is applied retroactively to serve as the start time for the workweek.[2]

Similarly, Menzies calculates and pays its non-exempt employees daily overtime after eight consecutive hours in a shift (minus time off the clock for meal periods), regardless of whether the employee's shift spans over midnight.  *Id*.  In other words, it calculates non-exempt employee's daily overtime wages from the start of their shift and continuing through the end of their shift, even when the shift straddles two calendar days.  *Id*.

Plaintiffs, who worked for Menzies at SFO until the termination of their employments, allege that Menzies's above-described practice, termed the "variable workday/workweek," fails to comply with California Labor Code provisions and results in under-compensation of Menzies's non-exempt employees' wages.  Mot. at 2.  Specifically, plaintiffs contend that Menzies's "non-exempt employees worked without appropriate overtime compensation, because they do not receive the legal overtime rate for the hours worked after the eight hours in a workday and/or after the forty hours in the designated workweek and/or hours worked during the seventh consecutive day in the designated workweek (Monday at 12:00am to Sunday at 11:59pm)."  SAC ¶ 106.

Plaintiffs also allege that, from June 2006 through December 2011, Menzies's wage statement did not provide the beginning of the pay period, did not reflect the rate or the total hours an employee worked as a "Lead," and failed to accurately include all hours worked and the

---

[2] An example is instructive.  Under Menzies's method, if an employee clocks in at 8:00am on Monday, at 7:30am on Tuesday, and then at 8:00am for the rest of the week, the 7:30am time is considered the "earliest time" on the schedule and is designated as the workweek's start time.  Therefore, in this example, the employee's workweek starts at 7:30am on Monday and concludes 168 hours from that time.

2

applicable hourly rate.  Lastly, plaintiffs assert that Menzies has violated California labor law by failing to pay all wages timely upon separation of employment.

The operative complaint encompasses seven theories of liability: (1) failure to pay minimum wage; (2) failure to pay overtime; (3) failure to timely pay all wages due upon separation of employment; (4) failure to provide accurate itemized wage statements; (5) failure to provide tools and equipment and/or reimburse business expenses; (6) violation of California Business and Professions Code § 17200, *et seq*.; and a (7) claim under the California Private Attorney General Act.  But plaintiffs only seek certification on some of their claims.  Specifically, they seek to certify the following classes:

> The SFO Overtime Class
> All current and former non-exempt employees of MENZIES AVIATION, INC. and/or MENZIES AVIATION GROUP (USA), INC., employed at the San Francisco International Airport who worked at least one shift that according to Defendants' time clock records worked one or more periods consisting of consecutive hours that extended beyond midnight (12:00 a.m.) into to [sic] the next calendar day at any time from June 2, 2006 to the present. (For Causes of Action Nos. 2, 4, 6).
>
> The Itemized Wage Statement Class:
> All current and former non-exempt employees of MENZIES AVIATION, INC. and/or MENZIES AVIATION GROUP (USA), INC., employed at the San Francisco International Airport at any time from June 2, 2006 to January 1, 2012 who received one or more wage statements that according to Defendants' records did not show the correct number of regular, overtime, or double time hours worked during the pay period, and/or did not show the corresponding applicable hourly rate, and/or failed to identify the inclusive dates of the pay period. (For Cause of Action No. 4).
>
> The Waiting time Penalties Class:
> All former non-exempt employees of MENZIES AVIATION, INC. and/or MENZIES AVIATION GROUP (USA), INC., employed at the San Francisco International Airport members of the SFO Overtime Class who did not receive all wages upon separation of employment and who separated employment at any time from June 2, 2007 to the present. (For Cause of Action No. 3).[3]

*Id*. at 1.

I heard argument on April 13, 2016 and granted plaintiffs' motion on May 4, 2016.

---

[3] Because the Waiting time Penalties Class is derivative of the SFO Overtime Class, the success of the Waiting time Penalties Class rises and falls with the SFO Overtime Class.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 23 governs class actions. "Before certifying a class, the trial court must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of Rule 23." *Mazza v. Am. Honda Motor Co., Inc.,* 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks omitted). The burden is on the party seeking certification to show, by a preponderance of the evidence, that the prerequisites have been met. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2550-51 (2011); *Conn. Ret. Plans & Trust Funds v. Amgen Inc.*, 660 F.3d 1170, 1175 (9th Cir. 2011).

Certification under Rule 23 is a two-step process. The party seeking certification must first satisfy the four threshold requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. Specifically, Rule 23(a) requires a showing that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

The party seeking certification must then establish that one of the three grounds for certification applies. *See* Fed. R. Civ. P. 23(b). Here, plaintiff seeks certification under Rules 23(b)(2) and 23(b)(3). Rule 23(b)(2) requires that a plaintiff show "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) requires a plaintiff to establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**DISCUSSION**

Plaintiffs easily satisfied the requisites for class certification, as I discuss below. I will not address again Menzies's argument concerning the effect of an arbitration agreement signed by certain class members, including Mijos. I have ruled on this issue. Dkt. No. 19. Menzies asserts that its appeal of my order denying its motion to compel arbitration has revealed new evidence relevant to the arbitration inquiry. If that is true, I am confident that the Ninth Circuit will take it into account.

**I.     RULE 23(a) REQUIREMENTS**

**A.     Numerosity**

Rule 23(a)(1) requires that the "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The party seeking certification "do[es] not need to state the exact number of potential class members, nor is a specific number of class members required for numerosity." *In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005). However, courts generally find that numerosity is satisfied if the class includes forty or more members. *See Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 605-06 (N.D. Cal. 2014); *In re Facebook, Inc., PPC Adver. Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012). Plaintiffs represent that Menzies has already identified approximately 782 potential members of the SFO Overtime Class and 1,135 potential members of the Itemized Wage Statement Class, of which a subset would likely be class members because they are: (1) employees who received one or more wage statements that did not show the correct number of hours worked during the pay period; (2) did not show every time they worked as "Lead"; and/or (3) failed to include the applicable first date of the pay period. Mot. at 15. Menzies does not dispute that the proposed classes satisfy numerosity.[4] I find that this element has been satisfied for all classes.

**B.     Commonality**

The requirement of commonality demands that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, the common question "must be

---

[4] Menzies also does not dispute plaintiffs' assertion that the classes are sufficiently ascertainable.

5

of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551. For purposes of Rule 23(a)(2), "even a single common question will do." *Id.* at 2556 (internal modifications omitted).

### i. SFO Overtime Class

Menzies asserts that because it assigns variable workdays and workweeks to employees depending on their unique shift and working schedule, this individualized application defeats commonality. Oppo. at 15 [Dkt. No. 40]. Its argument is unpersuasive. The commonality requirement does not require that class members suffer identical harm. Rather, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). There is no dispute that all non-exempt SFO employees are subject to the same individualized workday and workweek compensation formula. Therefore, there exists at least one common question – whether Menzies's policy of paying its non-exempt employees based on its variable workday/workweek policy, and not necessarily in accordance with the workweek as designated in the employee handbook, properly compensates class members pursuant to California law.

Menzies insists that in order to rule on class certification I need to make "threshold rulings of law" regarding the viability of plaintiffs' theories of liability. Oppo. at 16. But "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013). "Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195. Here, Menzies makes several arguments regarding why its practices are lawful, including that: (i) the workday need not align with the workweek; (ii) it need not apply the designated workweek as laid out in the employee handbook to all employees; and (iii) that it may compensate employees based on the schedules they actually worked. Oppo. at 16-20. But these merit-based arguments do not defeat class certification. When the alleged concern about a proposed class is that it exhibits not some

"fatal dissimilarity but rather, a fatal similarity" as to an element of plaintiffs' cause of action, the question is properly engaged with on summary judgment, not class certification. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016) ("When, as here, the concern about the proposed class is not that it exhibits some fatal dissimilarity but, rather, a fatal similarity – [an alleged] failure of proof as to an element of the plaintiffs' cause of action – courts should engage that question as a matter of summary judgment, not class certification.") (internal quotation marks omitted). Because Menzies's arguments would be relevant to all potential class members, they do not prevent a finding of commonality. I need not decide the ultimate question of whether Menzies's overtime policy is lawful or unlawful in order to certify the class. *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1166 n.5 (9th Cir. 2014) (Merits-based arguments are "appropriately made at trial or at the summary judgment stage.").

### ii. Itemized Wage Statements

Plaintiffs' Itemized Wage Statement class is based on Menzies's alleged violation of California Labor Code section 226. Their allegations rely primarily on three theories: (1) that the pay stubs did not include the start date of the pay period; (2) that Menzies failed to properly identify the rate of pay and the total number of hours worked as a "Lead;" and (3) that the pay stubs did not reflect the correct numbers of hours worked and their corresponding hourly rate. Menzies asserts that the existence of individualized questions regarding injury as a result of the missing start date precludes a finding of commonality.[5]  Oppo. at 23.

Section 226(a) requires every employer to furnish each of its employees an accurate itemized statement, "either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash," that shows, among other things, "the inclusive dates of the period for which the employee is paid" and "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate." Cal. Lab. Code § 226(a). Section 226(e)(1) provides that an

---

[5] Menzies also makes certain merits-based arguments which, as explained above, are more appropriately adjudicated on summary judgment. As I stated in my analysis of the Overtime Class, I need not, and I do not, decide now whether the deficiencies plaintiffs rely on actually make the pay stubs non-compliant with California law.

7

employee suffering injury as a result of a "knowing and intentional failure by an employer" to comply with Section 226(a) is entitled to damages for each pay period in which a violation occurs as well as costs and attorney's fees. Cal. Lab. Code § 226(e)(1). Plaintiffs may recover either actual damages or statutory damages of "fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)," plus attorney's fees. *Id*. Section 226(e)(2) establishes that an employee is deemed to suffer an injury if the employer "fails to provide accurate and complete information as required by [Section 226(a)] and the employee cannot promptly and easily determine from the wage statement alone" the accurate information. Cal. Lab. Code § 226(e)(2)(B). Section 226(e)(2)(C) defines "promptly and easily" based on a reasonable person's ability to ascertain the information in question. Cal. Lab. Code § 226(e)(2)(C).

Menzies contends that plaintiffs have not demonstrated any harm as a result of the missing information and that individual inquiries are required to make an injury determination. But "the injury requirement [of section 226] does not present a high hurdle for class certification." *Boyd v. Bank of Am. Corp.*, 300 F.R.D. 431, 440 (C.D. Cal. 2014); *see also Fields v. W. Marine Products Inc*., No. 13-cv-04916-WHA, 2014 WL 547502, at *8 (N.D. Cal. Feb. 7, 2014) (characterizing the injury requirement under section 226 as "minimal"); *Torchia v. W.W. Grainger, Inc*., 304 F.R.D. 256, 274 (E.D. Cal. 2014) (same). For certification, plaintiffs need only establish that their class presents at least one common question. Their claim presents common questions regarding whether Menzies's pay stubs lacked the required information under section 226 and whether it is possible to promptly and easily determine the missing information. Because injury is measured by a reasonable person's ability, these questions can be answered on a classwide basis through an examination of common evidence including the pay stubs themselves. *See Brewer v. Gen. Nutrition Corp*., No. 11-cv-3587-YGR, 2014 WL 5877695, at *5 (N.D. Cal. Nov. 12, 2014) ("Because the wage statements are uniform across the class with respect to these alleged violations of the statute, and proof of injury is based upon what a "reasonable person" would understand from the face of those wage statements, the issues of fact and law to be determined on these claims

8

are both common and predominant."). Plaintiffs' proposed classes satisfy the commonality requirement.

### C. Typicality and Adequacy

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement of Rule 23(a)(3) assures that the interests of the named representatives align with the interests of the rest of the class. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508 (internal quotation marks omitted).

Similarly, to establish adequacy under Rule 23(a)(4), named plaintiffs must show that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (internal quotation marks omitted).

Menzies does not assert that Jimenez or Mijos's injuries differ from those of absent class members. Nor does it contend that there is a conflict of interest between the named plaintiffs and other class members or that counsel is unable to vigorously prosecute the action. Instead, Menzies argues that Mijos is an inadequate class representative because of his "ignorance of his role" and allegedly suspect credibility based on his previous confrontations with coworkers and supervisors. Oppo. at 9-13.

Menzies contends that Mijos testified that he had never read the operative complaint, conceded that he did not understand parts of the pleading, and was not aware he was bringing the

lawsuit on behalf of others. *Id*. at 9. But this unfairly mischaracterizes Mijos's deposition testimony. While he did admit that he saw, but did not read the complaint, when asked what he understood the complaint to be about he explained that it was against Menzies because, in part, he did not receive overtime pay. Mijos Depo. 60: 10-20 [Ward Decl., Exh. F]. Furthermore, he stated that although the complaint currently only involves himself, he explained that it would be appropriate if others wanted to get involved because there were many other employees who also did not receive proper pay. *Id*. His knowledge of the case is also reflected in the declaration he filed contemporaneously with his motion for class certification.[6] In his declaration, he asserts that he is "familiar with [his] duties as a class representative" and "believe[s] that [his] interests are the same as the interests of the other non-exempt [employees] because [he] believe[s they] were all subject to the same policies and practices of Menzies and were similarly injured by Menzies's company-wide policies and practices." Mijos Decl. ¶¶ 7, 8 [Dkt. No. 39-15].

In general, "a party who is not familiar with basic elements of its claim is not considered to be an adequate representative for the class because there is no sense that there is an actual party behind counsel's prosecution of the action." *Burkhalter Travel Agency v. MacFarms Int'l, Inc.*, 141 F.R.D. 144, 153 (N.D. Cal. 1991). But named plaintiffs need not be legal experts in order to be considered adequate representatives. *See Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 611 (N.D. Cal. 2004) ("The threshold of knowledge required to qualify a class representative is low; a party must be familiar with the basic elements of her claim[ ], and will be deemed inadequate only if she is 'startlingly unfamiliar' with the case.") (internal quotation marks and citation omitted). Plaintiffs with comparable preparation and knowledge of their cases have been found adequate to represent Rule 23 classes. *See, e.g.*, *Brown v. Brewer*, No. 06-cv-3731, 2009 WL 1574556, at *4 (C.D. Cal. May 29, 2009) (finding the named plaintiff adequate when he displayed an understanding of the nature of the litigation and his role as a class representative, despite not being

---

[6]Menzies's assertion that the declaration was drafted without meaningful input from Mijos and that he could not understand what he was signing is not supported by the record. Oppo. at 10. While Mijos admitted his English speaking abilities were limited, and relied on a translator during his deposition, he testified that he was able to read and write in English and had read his declaration before signing it. Mijos Depo. at 7:9-12; 35:10-17.

able to identify "key elements" of the case); *Jones v. ConAgra Foods, Inc.*, No. 12-cv-01633-CRB, 2014 WL 2702726, at *7 (N.D. Cal. June 13, 2014) (finding the named plaintiff in a consumer mislabeling case adequate despite "not having reviewed the initial complaint or the SAC before they were filed and [] having no independent understanding of [the ingredients at issue]"). Accordingly, Mijos's knowledge of the case does not prevent him from being an adequate representative.

Menzies's argument relating to Mijos's past conduct also fails. Menzies relies primarily on two interactions Mijos had with its supervisors to attack Mijos's credibility. One incident involved a verbal exchange regarding Mijos's alleged presence at a liquor store during a day he had called off from work. Mijos Depo. at 39:3-20. The other involved a confrontation with a supervisor that led Mijos to punch him. *Id*. at 43:2-12. "Character attacks made by opponents to a class certification motion and not combined with a showing of a conflict of interest have generally not been sympathetically received in this district." *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 682 (N.D. Cal. 1986). While potentially reflecting Mijos's strained relationships with his managers, these interactions are unrelated to the underlying causes of action in this case. *See Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010) ("There is inadequacy only where the representative's credibility is questioned on issues directly relevant to the litigation or there are confirmed examples of dishonesty, such as a criminal conviction for fraud."). Menzies claims that these interactions undermine Mijos's credibility as a class representative, but it has failed to demonstrate that Mijos has lied or misrepresented the events at issue.[7] In fact, Mijos appeared to testify openly about the confrontations during his deposition. *See* Mijos Depo. at 39-43. The confrontations may go to bias, and if they are admissible the jury can evaluate them, but they are not pertinent to class certification.

---

[7] Menzies's attempt to analogize to *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) (holding that the district did not abuse its discretion when it determined that the named plaintiff was an adequate class representative despite "convictions for offenses involving dishonesty" and his use of false names) and *Harris v. Vector Marketing Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010) (finding that the named plaintiff exhibited credibility problems but determining, nonetheless, that she was an adequate representative because the lies she told were not directly relevant to her claims) are inapposite and do not support its position.

1          Considering the absence of identified conflicts of interest between the named plaintiffs and
2  the absent class members, the lack of injuries unique to named plaintiffs, and class counsel's
3  ability and willingness to diligently prosecute this action, plaintiffs have fulfilled the adequacy and
4  typicality requirements of Rule 23(a).

**II.     RULE 23(b)(3) REQUIREMENTS**

**A.     Predominance**

The test for predominance under Rule 23(b)(3) asks "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  This analysis focusses on the relationship between common and individual issues.  *Hanlon*, 150 F.3d at 1022.  To satisfy this subsection, common questions must predominate over any questions affecting only individual members.  *Id*.

While not specifically labeled as a predominance argument, Menzies contends that plaintiffs have not shown that other class members have been affected by the alleged deficiencies in Menzies's wage statements.  Oppo. at 22.  In support of their Itemized Wage Statement class, plaintiffs provide Mijos and Jimenez's pay stubs to demonstrate that Menzies's wage statements do not include the start date of the pay period and do not reflect the total hours or rate of pay for when Jimenez worked as a "Lead."  Cordero Decl., Exhs. 12, 13.  Menzies has provided no evidence establishing that these pay stubs are not representative of those distributed to absent class members.  According to deposition testimony by Talin Bazerkanian, Menzies's corporate manager, Menzies's wage statements followed an identical format until approximately December 2011.  Bazerkanian Depo. at 79:22-80:6; 91:21-92:7 [Cordero Decl., Exh. 7].  Because the Itemized Wage Statement class period ends on January 1, 2012, the uniform pay stubs can serve as a common form of proof of the presence or absence of the required information during the class period.  For class certification purposes, plaintiffs have sufficiently demonstrated that the question of whether Menzies's pay stubs comply with California law predominates amongst the class.

**B.     Superiority**

Certification under Rule 23(b)(3) requires a showing that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.

23(b)(3). Factors relevant to this determination include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id*. "A consideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under [Rule 23(b)(3) ] are those that can be adjudicated most profitably on a representative basis." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (internal quotation marks omitted).

Plaintiffs assert that there are at least three benefits to be gained from class treatment in this case: (i) "redress for numerous aggrieved parties who could not otherwise maintain individual actions;" (2) "the avoidance of the possibility of multiple actions;" and (3) "the disgorging of the wrongdoer's unjust enrichment." Mot. at 21. They explain that in the absence of certification, many current and former Menzies employees will not bring individual claims because they lack an understanding that their rights have been violated, they are concerned with the costs involved in suing a current or former employer, and/or may fear retaliation. *Id*. There is no evidence that individual class members' interests control the litigation or that class members have filed parallel litigation, and Menzies makes no arguments opposing a finding of superiority. In light of this, I find that class treatment is superior to other available methods to ensure fair and efficient adjudication. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009) ("The overarching focus remains whether trial by class representation would further the goals of efficiency and judicial economy."); *see also Ambrosia v. Cogent Comm'ns, Inc.*, 312 F.R.D. 544, 558 (N.D. Cal. 2016) (finding superiority when class treatment was likely to reduce litigation costs and promote efficiency relative to trying each case individually)

**III.   OBJECTIONS**

Menzies objects to and moves to strike the entirety of the Cordero Reply Declaration, and the exhibits offered therein, on the basis that it violates Civil Local Rules 7-3 and 7-4 by arguing issues not presented in the motion for class certification or within plaintiffs' reply brief. Dkt. No.

44. Additionally, Menzies specifically identifies certain paragraphs of the declaration that it contends violate Federal Rule of Evidence 401. *Id.* Because I do not rely on the declaration or the attached exhibits for the purposes of this Order, Menzies's objection is MOOT.[8]

## CONCLUSION

For the reasons stated above, I GRANTED plaintiffs' motion for class certification.

**IT IS SO ORDERED**.

Dated: June 13, 2016



WILLIAM H. ORRICK
United States District Judge

---

[8] Menzies's request for judicial notice of Exhibits 1-5 is GRANTED. Dkt. No. 41. Under Federal Rule of Evidence 201(b), a judicially noticed fact must be one not subject to reasonable dispute because it is either (1) "generally known within the trial court's territorial jurisdiction;" or (2) "can be adequately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(d). The Court takes judicial notice of the existence of Exhibits 1 through 5 as they are primarily court records in the matter of *Wright v. Menzies Aviation, Inc. et al.*, Los Angeles Superior Court Case No. BC441308, as well as an excerpt of a decision from the California Court of Appeal regarding an appeal from the Superior Court's decision in *Wright*. *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (A court may "take judicial notice of undisputed matters of public record, including documents on file in federal or state courts.") (internal citation omitted). The requests for judicial notice of the state court's rulings are granted as to the existence of the opinions but not as to the truth of their contents. *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001). But I reject Menzies's argument that the *Wright* case creates an issue preclusion problem for plaintiffs. Issue preclusion, or collateral estoppel, is appropriate when: "(1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action." *In re Palmer*, 207 F.3d 566, 568 (9th Cir. 2000). Here, the plaintiffs in this action were not a party to nor in privity with a party in the *Wright* suit. Therefore, issue preclusion does not apply.