UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JESSICA JIMENEZ, et al.,

    Plaintiffs,

v.

MENZIES AVIATION INC, et al.,

    Defendants.

Case No. 15-cv-02392-WHO

**ORDER REGARDING MOTION FOR SANCTIONS**

Re: Dkt. No. 42

## INTRODUCTION

Plaintiffs Jessica Jimenez and Orlando Mijos seek sanctions against defendants Menzies Aviation Group (USA), Inc. and Menzies Aviation, Inc. (collectively "Menzies"). Apparently, one of Menzies's former supervisors destroyed certain paper time records and other relevant documents that Menzies had stored in a shed near its offices. Menzies is clearly responsible for the loss of the records, but the extent to which the loss prejudices plaintiffs remains undetermined. Plaintiffs request adverse jury instructions and monetary sanctions in an amount totaling over $200,000. I GRANT plaintiffs' request for monetary sanctions, limited to the amount of the attorney's fees and costs necessary to bring this motion, and DENY, at least at present, the request for adverse jury instructions.[1]

## BACKGROUND

From 2006 through 2008, all Menzies's non-exempt employees at San Francisco International Airport ("SFO") recorded their working hours on paper time cards. Some also recorded their time electronically. In 2008, Menzies began converting its timekeeping system at SFO from punched daily paper time cards to an electronic timekeeping system, completing that

---

[1] When the impact of the destroyed records is more fully developed, I will consider whether additional sanctions, monetary and evidentiary, are appropriate.

process in 2010.[2] Sometime in 2010 prior to the filing of this lawsuit in June 2010, Menzies destroyed the paper time records for all employees who also recorded their time electronically because the paper records were duplicative. It retained the paper time cards for employees where it did not have duplicate electronic information.

On July 9, 2010, Menzies was served with the original complaint in this case. The putative wage-and-hour class action defined the potential class as including employees who worked for Menzies at SFO in the four preceding years. Dkt. No. 1-2 at 10-12. Upon receiving notice of the complaint, Christopher Ward, Menzies's counsel, "instructed Menzies to place a hold on all documents that may relate to the claims and allegations in the Complaint." Ward Decl. ¶ 2 [Dkt. No. 45-1]. In August 2010, Menzies removed the case to this district where it remained effectively stayed until it was remanded back to state court on April 8, 2013. No discovery occurred during this period. At some unidentified time during this approximately 32 month period, Menzies gathered up the SFO paper time cards that had not been duplicated electronically and placed them into a storage shed outside of its SFO administrative offices.

After the case was remanded, the parties began to propound discovery. On August 23, 2013, Jimenez requested that Menzies produce all time records detailing the hours and/or shifts all SFO non-exempt employees worked from June 2006. Cordero Decl., Exh. 3 at 9 (Demand for Production No. 28) [Dkt. No. 42-2]. Menzies asserted various objections. In the ensuing months, the parties engaged in multiple informal discussions and meet and confers to resolve discovery-related issues, including privacy objections and Menzies's alleged failure to produce responsive documents. Menzies eventually submitted verified responses to requests 28-31 of plaintiffs' first set of requests on May 15, 2014, including the assertion that it would produce documents responsive to plaintiffs' request for time records from June 2006. By mid-December 2014, Jimenez had received a sample of the putative class members' time and pay records, consisting of thousands of documents. However, none of these documents included time cards for the putative class members from the 2006-2008 time period.

---

[2] The facts are based on the information provided by the parties in their moving papers.

In May 2015, Jimenez filed an amended complaint which added Mijos as a class representative. Menzies again removed the case to federal court. The parties continued their discovery process. In September 2015, plaintiffs requested that Menzies produce all documents and electronically stored information containing any information relating to shifts and/or work schedules Mijos worked or was assigned to work from June 2, 2006 to the present (Demand for Production No. 3); all documents used for recording Mijos's hours worked, beginning and ending times for each work period and break period, and total daily hours worked (Demand for Production No. 9); and all time records for each and every current and former non-exempt employee that worked a shift that extended beyond midnight (Demand for Production No. 12). Cordero Decl., Exh. 15.

Plaintiffs were dissatisfied with Menzies's allegedly unverified and incomplete responses to this set of requests and the parties thereafter met and conferred over the phone on November 20, 2015. As a result of that conversation, they agreed as follows: (1) Menzies would provide supplemental verified responses; (2) Menzies would provide a list with all the names, employee ID numbers, and contact information for all employees that worked at least one shift extending beyond midnight, and from that list the parties would thereafter select a sample number of people for which Menzies would have to produce pay data for the periods which the employees worked a shift that extended beyond midnight; (3) Menzies would produce all time and pay records for Mijos; and (4) certain depositions would be rescheduled.

On February 16, 2016, plaintiffs conducted the deposition of Talin Bazerkanian, Menzies's Manager of Corporate Services. During this deposition, plaintiffs learned that at some unidentified time in 2013, Menzies had destroyed the paper time cards and other employee records encompassing a period of approximately four years, from 2006 to 2010.[3] According to Menzies,

---

[3] Plaintiffs assert that the destroyed documents included evidence of the clock in and clock out times for: (i) "Every single non-exempt employee working at the SFO from June 2006 to January 2008, Plaintiff Mijos included;" (ii) "Most of Defendants' non-exempt employees working at the SFO as a Ramp agent from January 2008 to December 2009;" (iii) "Every single non-exempt employee working at the SFO as a Cargo Agent from January 2008 to July 2009;" (d) "Most of Defendants' non-exempt employees working at the SFO as a Cargo Agent from July 2009 to December 2009." Reply at 3 [Dkt. No. 47].

3

a few days before her deposition, Bazerkanian was informed that a former Menzies manager had decided to clean out the shed where the documents had been stored and dumped the documents collected in 2010.

On March 2, 2016, Menzies confirmed that that the paper time records were destroyed. A few days later, plaintiffs moved for class certification on their proposed classes. While the briefing on class certification was ongoing, plaintiffs filed this motion for sanctions seeking both adverse jury instructions and attorney's fees against Menzies. On April 13, 2016, I held a hearing on the motion for class certification, which I granted on May 4, 2016. Dkt. No. 51. I held a hearing on the motion for sanctions on May 18, 2016.

## LEGAL STANDARD

"There are two sources of authority under which a district court can sanction a party who has despoiled evidence: the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under [Federal Rule of Civil Procedure] 37 against a party who fails to obey an order to provide or permit discovery." *Leon v. IDX Sys. Corp.*, 464 F.3d 951 (9th Cir. 2006) (quotation marks omitted). A trial court's discretion in selecting the form of a spoliation sanction is broad, and can range from comparatively minor sanctions, such as awarding attorney's fees, to more severe sanctions, such as dismissal. The determination of an appropriate sanction "is assessed on a case-by-case basis." *Io Grp. Inc. v. GLBT Ltd.*, 10-cv-1282-DMR, 2011 WL 4974337, at *3 (N.D. Cal. Oct. 19, 2011) (internal quotation marks omitted).

To determine whether spoliation occurred, the majority of courts use some variation of a three-part test: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind;' and (3) that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 989 (N.D. Cal. 2012) (citing cases). If spoliation is found, then courts generally consider three factors to determine whether and what type of sanctions to issue: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice

4

1  suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid
2  substantial unfairness to the opposing party." *Id*. at 992.

## DISCUSSION

**I.    FEDERAL RULE OF CIVIL PROCEDURE 37 AND CIVIL LOCAL RULE 37**

Menzies argues that plaintiffs' failure to meet and confer before filing the present motion for sanctions undermines the motion and requests that it be summarily denied.  Oppo. at 11 [Dkt. No. 45].  In making this argument, Menzies relies on both Federal Rule of Civil Procedure ("FRCP") 37 and Civil Local Rule ("Local Rule") 37.

Under FRCP 37(a) a party may move for an order compelling discovery.  A motion for a court order must include a "certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  Fed. R. Civ. P. 37(a).  Under Local Rule 37-1, a court will not entertain a request or a motion to resolve a disclosure or discovery dispute unless, pursuant to FRCP 37, the parties have previously conferred for the purpose of attempting to resolve all disputed issues.  If a party fails to comply with a court order to provide or permit discovery, FRCP 37(b) allows the court to issue sanctions.

Menzies argues that because plaintiffs did not attempt to meet and confer prior to filing their motion for sanctions, the motion should be denied.  But this case does not involve a previous court order regarding discovery on this issue.  Although plaintiffs originally moved under FRCP 37 and Local Rule 37-4, they clarified in their reply brief that they are seeking sanctions under the court's inherent power.  Reply at 7.  The Ninth Circuit has held that a court may implement sanctions arising out if its inherent power to manage its own affairs and need not rely on FRCP 37. *See Leon*, 464 F.3d at 958.  The better practice is always to meet and confer.  But because there is no directly applicable section of FRCP 37 and I need not rely on it to authorize sanctions, I will not delay resolution of this dispute further by requiring another meet and confer session regarding the remedy for Menzies's conduct.

**II.   SPOLIATION**

Of the three elements needed to demonstrate spoliation under the common law, there is no

5

1  genuine debate over the first and third prong – namely, whether Menzies had an obligation to
2  preserve the evidence at the time it was destroyed and whether the evidence is related to plaintiffs'
3  case. In recognition of their potential relevancy, Menzies, at the instruction of counsel, gathered
4  up the documents and placed them in the SFO warehouse soon after receiving notice of the
5  complaint. At no point during this litigation was Menzies relieved of its obligation to preserve
6  relevant documents.

7  Menzies's principal opposition to a finding of spoliation centers on whether it had a
8  "culpable state of mind" when the documents were destroyed. Plaintiffs argue that Menzies acted
9  "vexatiously, wantonly, and for oppressive reasons when [it] destroyed key evidence in this case."
10  Reply at 6. In opposition, Menzies argues that the destruction was not undertaken with any
11  conscious "intent to deny the [plaintiffs] the sought-after information." Oppo. at 15.

12  The Ninth Circuit has recognized that "the power of the district court to sanction under its
13  inherent powers not only for bad faith, but also for willfulness or fault by the offending party."
14  *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 n.2 (9th Cir. 1992);
15  *see also Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) ("As *Unigard* correctly notes,
16  however, a finding of 'bad faith' is not a prerequisite to this corrective procedure."). "A party's
17  destruction of evidence qualifies as willful spoliation if the party has some notice that the
18  documents were potentially relevant to the litigation before they were destroyed." *Leon*, 464 F.3d
19  at 959 (internal quotation marks and citation omitted) (emphasis in original).

20  Here, even if Menzies acted in the absence of any malicious or wanton conduct, it
21  destroyed the documents despite being on notice that the documents were potentially relevant to
22  this lawsuit. Therefore, its actions were undertaken with the required "culpable state of mind" and
23  a finding of spoliation is warranted. *See In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d
24  1060, 1074 (N.D. Cal. 2006) (holding that even if the defendant was only "grossly negligent in
25  executing its duties to preserve evidence [] by failing to implement a litigation hold," this satisfied
26  the state of mind requirement for a finding of spoliation); *Zest IP Holdings, LLC v. Implant Direct*
27  *Mfg., LLC*, No. 10-cv-0541, 2013 WL 6159177, at *9 (S.D. Cal. Nov. 25, 2013) (holding
28  defendants destroyed the documents with a culpable state of mind when they were "at least

negligent in not implementing a litigation hold [] and not giving any affirmative instructions to their employees to preserve potentially relevant documents").

### III.     SANCTIONS

Having determined that spoliation has occurred, I now turn to the question of what sanctions are appropriate. The factors to be considered are: "(1) the degree of fault of the party who destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether a lesser sanction would avoid substantial unfairness to the opposing party." *Toppan Photomasks, Inc. v. Park*, No. 13-cv-03323-MMC, 2014 WL 2567914, at *8 (N.D. Cal. May 29, 2014). Menzies argues that plaintiffs' entitlement to sanctions is undermined by the absence of any demonstrated prejudice arising from the loss of the paper records and the premature nature of an adverse jury instruction.

When considering prejudice to the opposing party, a court must determine whether "the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 354 (9th Cir. 1995); *see also Hamilton v. Signature Flight Support Corp.*, No. 05-cv-490-MEJ, 2005 WL 3481423, at *8 (N. D. Cal. Dec. 20, 2005) (holding that the test for prejudice "is whether there is a reasonable possibility, based on concrete evidence, that access to the evidence which was destroyed or altered, and which was not otherwise obtainable, would produce evidence favorable to the objecting party"). Menzies's prejudice argument relies in part on its contention that the absence of the paper statements did not prevent plaintiffs from seeking or supporting their request for class certification.[4] Oppo. at 11. While Menzies is correct that the missing paper timecards did not prevent plaintiffs from successfully moving for class certification, the paper records are likely to be relevant to calculating accurate damages and identifying potential class memebers.

In consideration of this potential for prejudice, Menzies presents in its opposition brief the option of engaging an expert, paid for by Menzies, to determine if the missing information can be

---

[4] The motion for sanctions was brought while the motion for class certification was still pending.

7

1  adequately reconstructed or modeled. During the hearing on this motion, I discussed this option
2  with the parties and ordered them to meet and confer regarding whether this proposal was viable.
3  The parties summarized the outcome of their meet and confer efforts via a joint submission that
4  has recently been submitted to the Court. Dkt. No. 53. The submission states that the parties have
5  agreed to attempt to engage an expert who will examine the records in existence and advise the
6  parties to what extent modeling is possible and whether a reasonably reliable re-creation is
7  feasible. The submission also reflects plaintiffs' position that the lack of records makes
8  ascertaining the identity of certain class memebers extremely cumbersome and that they will not
9  agree to any modeling based on an averaging of time worked by the class.

10  Because the extent to which an expert can successfully model or recreate the missing
11  information is unknown, I cannot, on the basis of the current record, accurately determine the
12  impact of the loss. Therefore, at this time, an adverse jury instruction is not appropriate. *See*
13  *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 288 (N.D. Cal. 2015) ("Courts often
14  decline to impose sanctions for spoliation where the documents withheld are unlikely to
15  material[ly] affect the outcome of the case, insofar as other evidence exists to provide the same
16  information.") (citing cases); *see also Toppan Photomasks, Inc.*, 2014 WL 2567914, at *9
17  ("Where a non-spoliating party has other evidence to prove its case, the degree of prejudice is
18  lower, and a court may decline to impose adverse inference sanctions.").

19  Plaintiffs' request for an adverse jury instruction is DENIED. If as a result of the expert's
20  analysis it is determined that a mutually agreeable substitute for the information is not possible,
21  further sanctions may be warranted.

22  **IV. ATTORNEY'S FEES**

23  Plaintiffs also request monetary sanctions against Menzies in the amount equal to the
24  attorney's fees plaintiffs' counsel have incurred from their efforts to meet and confer and obtain
25  the missing records. Plaintiffs estimate that this total amount will exceed $200,000. Menzies's
26  opposition to this request relies in part on its argument that plaintiffs have not itemized their
27  request.

28  "Under its 'inherent powers,' a district court may also award sanctions in the form of

8

attorneys' fees against a party or counsel who acts in bad faith, vexatiously, wantonly, or for oppressive reasons." *Leon*, 464 F.3d at 961 (internal quotation marks and citations omitted). "Before awarding such sanctions, the court must make an express finding that the sanctioned party's behavior constituted or was tantamount to bad faith." *Id*. (internal citations omitted). "A party demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Id*. (internal citations omitted). The amount of monetary sanctions must be "reasonable." *Id*. (internal quotation marks and citations omitted).

Here, some monetary sanctions are warranted. Plaintiffs propounded discovery requests encompassing these missing records as early as August 2013. However, despite the records' destruction sometime in 2013, their absence only came to light in February 2016, and even then only in response to direct questioning by plaintiffs' counsel of Bazerkanian during her deposition. This demonstrates Menzies's gross negligence in maintaining the paper records, searching for properly responsive documents during discovery, and timely informing plaintiffs' counsel of their absence. Other courts have award monetary sanctions in similar scenarios. *See, e.g.*, *Zest IP Holdings, LLC*, 2013 WL 6159177, at *10 ("Defendants' negligence and their denial of spoliation of evidence caused delay and unnecessary costs that could have been avoided had Defendants simply put in place a litigation hold and monitored a document preservation policy, as they were obligated to do."); *In re Napster, Inc. Copyright Litig*., 462 F. Supp. 2d at 1078 (awarding monetary sanction when the defendant "could have forestalled a great deal of time and effort by simply acknowledging early on that it was not preserving its internally generated [litigation]-related communications").

However, plaintiffs' requested amount is not reasonable on the basis of the record before me. Plaintiffs justify their request for over $200,000 in attorney's fees by representing that this amount is necessary to cover their expenses for: (1) "meeting and conferring with Defendants regarding the production of the putative class members' time and pay records for the class period (June 2006 to the present) (approximately 60 hours);" (2) "preparing and filing two separate motions to compel, and drafting a joint letter brief sent to defense counsel outlining the discovery disputes (approximately 51 hours);" (3) "investigating and analyzing the voluminous and

extremely disorganized data Defendants produced, attempting to locate all putative class members, and trying to determine the documents not produced in discovery, (approximately 295 hours);" (4) "preparing and propounding additional discovery regarding the whereabouts of documents (approximately 96 hours);" and (5) "preparing and filing this instant motion for sanctions (approximately 32.10 hours)."  Mot. at 12-13 [Dkt. No. 42-1].  This request is not appropriately tailored to the alleged harm and as a result is audaciously high.  For example, it is implausible that plaintiffs' counsel would not have spent a significant portion of the claimed 295 hours reviewing the data Menzies produced and identifying putative class members even if certain documents had not been missing.

Given the circumstances of this case, reimbursement of the reasonable attorney's fees and costs associated with this motion is an appropriate award.  Plaintiffs' request for monetary sanctions is GRANTED for this amount only.

## CONCLUSION

Plaintiffs' motion for sanctions is GRANTED IN PART and DENIED IN PART.  Plaintiffs' counsel should file a declaration justifying their fees and providing an itemization of the fees and costs associated this motion within 14 days of this Order.  Menzies may thereafter file a response within 7 days addressing the reasonableness of the request.  No reply brief or hearing is necessary absent further court order.

**IT IS SO ORDERED**.

Dated: June 13, 2016



WILLIAM H. ORRICK
United States District Judge