1  Graham S.P. Hollis, Esq. (SBN 120577)
   ghollis@grahamhollis.com
2  Vilmarie Cordero, Esq. (SBN 268860)
   vcordero@grahamhollis.com
3  GRAHAMHOLLIS APC
   3555 Fifth Avenue, Suite 200
4  San Diego, California  92103
   Telephone: 619.692.0800
5  Facsimile: 619.692.0822

6  Attorneys for Plaintiffs Jessica Jimenez, Orlando Mijos,
   Sara Wright and Aggrieved Employees

7

8                  **UNITED STATES DISTRICT COURT**

9                  **NORTHERN DISTRICT OF CALIFORNIA**

10                 **SAN FRANCISCO DIVISION**

11 JESSICA JIMENEZ and ORLANDO MIJOS,          Case No.:    15-CV-02392-WHO
   individually and on behalf of all other current
12 and former similarly situated California        **NOTICE OF MOTION AND PLAINTIFFS'**
   employees of Defendants,                        **MOTION FOR PRELIMINARY APPROVAL**
13                                                  **OF CLASS AND PAGA ACTION**
                    Plaintiff,                      **SETTLEMENT, AND FOR ORDER**
14                                                  **DIRECTING DISTRIBUTION OF THE**
        v.                                          **NOTICE OF SETTLEMENT TO THE**
15                                                  **SETTLEMENT CLASS, AND SETTING A**
   MENZIES AVIATION, INC., MENZIES                  **HEARING FOR FINAL APPROVAL OF**
16 AVIATION GROUP (USA), INC., and DOES            **CLASS SETTLEMENT FOR NOVEMBER 29,**
   1 THROUGH 10, inclusive                         **2017**
17
                    Defendant.
18                                                  Date:          June 7, 2017
19                                                  Time:          2:00 p.m.
                                                    Location:      Courtroom 2, 17th Floor
20
                                                    Complaint Filed:   June 2, 2010
21                                                  Judge:             Hon. William H. Orrick

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

                                                    CASE No. 15-CV-02392- WHO

Graham**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**TO THE COURT, DEFENDANTS AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on June 7, 2017 at 9:00 a.m. in Courtroom 2 on the 17th Floor of the United States District Court for the Northern District of California, San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Jessica Jimenez, Orlando Mijos ("Plaintiffs") will, and hereby do move this Court, for entry of the proposed Order submitted herewith preliminarily approving the Class and PAGA action settlement, and for an Order directing the distribution of the Notice to the Settlement Class and setting a hearing for final approval of the Class Settlement.  This Motion is made pursuant to Federal Rules of Civil Procedure, Rule 23, which requires Court approval before the claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. Fed.R.Civ.P.23(e).  This Motion should be granted on the ground that the Class Settlement satisfies all of the criteria for preliminary settlement approval under Federal law.  Plaintiffs and Defendants have engaged in substantial discovery and litigation in this case, including both sides filing motions for Partial Summary Judgment, and have reached the proposed Settlement only after conducting a thorough investigation of the facts and after this Court has heard and addressed the merits of most of Plaintiffs' class action claims and Defendants' defenses. Counsel for both parties are available and respectfully request that the final approval hearing be set for Wednesday, November 29, 2017, or as soon thereafter as is practicable for the Court.

This Motion is based on this Notice and supported by the following documents filed concurrently herewith:  Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Approval and for Order; the Declaration of Graham S.P Hollis, Esq., and the Exhibits attached therein; the Declaration of Plaintiffs and Class Representatives Jessica Jimenez, Orlando Mijos and Sara Wright; all other pleadings and papers filed in this Action and part of the record, and all such other evidence and arguments as may be presented to this Court wither prior or at the hearing on this matter, and such other matters as the Court may consider.

Dated: May 3, 2017                                    GRAHAM**HOLLIS** APC

By:  /s  Graham S.P. Hollis
GRAHAM S.P. HOLLIS
Attorneys for Plaintiffs Jessica Jimenez, Orlando
Mijos, Sara Wright and Aggrieved Employees

PLAINTIFFS' MOTION  FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION
SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ...................................................................................................1

II.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND IN THE ACTIONS .............1

  A.  THE *JIMENEZ* LITIGATION........................................................................1

  B.  THE *WRIGHT* LITIGATION.........................................................................2

  C.  DISCOVERY COMPLETED..........................................................................4

  D.  THE THIRD AMENDED COMPLAINT ...........................................................5

III.  SUMMARY OF SETTLEMENT TERMS PLAINTIFFS' SEEK THIS COURT TO PRELIMINARY APPROVE ......................................................................................6

  A.  SETTLEMENT AMOUNTS ..........................................................................6

  B.  SETTLEMENT CLASSES.............................................................................7

  C.  CALCULATION OF SETTLEMENT CLASS MEMBERS' INDIVIDUAL AWARDS .................................................................................................8

  D.  SCOPE OF THE RELEASE...........................................................................9

  E.  ALLOCATION OF UNCLAIMED FUNDS.......................................................10

  F.  ADMINISTRATION OF THE SETTLEMENT AND NOTICE PROCEDURE .............10

IV.  LEGAL STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS....................................................................................................11

V.  LEGAL ARGUMENTS...........................................................................................13

  A.  THE PROPOSED SETTLEMENT CLASSES SATISFY RULE 23 BECAUSE THEY REMAIN THE SAME OR ARE SUBSET OF THE CLASSES ORIGINALLY CERTIFIED BY THIS COURT ............................................13

    1.  The Settlement Classes Contain Numerous Members...........................14

    2.  Common Questions of Law Exists As to the Settlement Class Members .............14

    3.  All Class Representatives Are Typical And Adequately Represent The Settlement Classes .................................................................15

  B.  THE PARTIES REACHED THE CLASS SETTLEMENT AS A RESULT OF NON-COLLUSIVE, ARMS LENGTH NEGOTIATIONS .................................15

  C.  PLAINTIFFS CONDUCTED A THOROUGH INVESTIGATION OF THE CLAIMS ...............................................................................................16

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

CASE No. 15-CV-02392-WHO

PLAINTIFFS' MOTION  FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

D.   THE SETTLEMENT HAS NO OBVIOUS DEFICIENCIES AND DOES NOT GRANT IMPROPER PREFERENTIAL TREATMENT TO PART OF THE CLASS OR THE CLASS REPRESENTATIVES............................................................16

E.   THE SETTLEMENT PROVIDES FOR REASONABLE, FAIR AND ADEQUATE RELIEF TAKING INTO CONSIDERATION THE SIGNIFICANT RISKS OF FURTHER LITIGATION ...........................................................17

F.   THE SERVICE AWARDS AND THE ATTORNEY'S FEES AND COSTS PROVISION FALL WELL WITHIN THE RANGE OF REASONABLENESS............21

1.   Courts Routinely Award the Class Representatives A Service Award.................21

2.   The Significant Amount of Work Performed by Class Counsel Supports the Request for Attorney's Fees and Reimbursement of Actual Costs .................23

G.   THE PROPOSED NOTICE TO CLASS MEMBERS IS ADEQUATE ..........................25

VI.   CONCLUSION.............................................................................................25

Graham**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' MOTION  FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

# TABLE OF AUTHORITIES

<u>Page</u>

**Federal Cases**

*Acosta v. Trans Union LLC,*
   243 F.R.D. 377 (C.D. Cal. 2007) ................................................. 17

*Boyd v. Avanquest N. Am. Inc,*
   No. 12-CV-04391-WHO, 2015 WL 4396137 (N.D. Cal. July 17, 2015)..................................... 17

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ................................................. 17

*Cook v. Neidert*,
   142 F.3d 1004 (7th Cir. 1998) ................................................. 22

*Custom LED, LLC v. eBay, Inc*,
   No. 12–CV–00350–JST, 2013 WL 6114379 (N.D. Cal. Nov. 20, 2013).................................. 17

*Fleming v. Covidien,*
   No. ED CV 10-01487 RGK (OPX), 2011 WL 7563047 (C.D. Cal. Aug. 12, 2011) ................... 21

*Gay v. Waiters' & Dairy Lunchmen's Union Local No. 30*,
   489 F. Supp. 282 (N.D. Cal. 1980), *aff'd* 694 F.2d 531 (9th Cir. 1982) ...................................... 14

*Hanlon v. Chrysler Corp.*
   150 F.3d. 1011 (9th Cir. 2009) ............................................... 12, 13, 21

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ................................................. 15

*In re Mego Fin. Corp. Sec. Litig*.
   213 F.3d 454 (9th Cir. 2000) ................................................. 21

*In re Omnivision Technologies, Inc*.
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....................................... 21

*In re Portal Software, Inc. Sec. Litig.*,
   No. C-03-5138-VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007)...................................... 19

*In re Prudential Sec., Inc. Ltd. Partnerships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ............................................. 17

*In re S. Ohio Corr. Facility*,
   175 F.R.D. 270 (S.D. Ohio 1997) ............................................ 22

*In re TD Ameritrade Account Holder Litig.*,
   No. C 07–2852 SBA, 2011 WL 4079226 (N.D. Cal. Sept. 13, 2011)...................................... 12

*In re Traffic Exec. Ass'n-E. Railroads*,
   627 F.2d 631 (2d Cir. 1980)........................................... 13, 17

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

*Ingram v. The Coca- Cola Co.*,
   200 F.R.D. 685 (N.D. Ga. 2001) ................................................................................... 22

*Officers of Justice v. Civil Service Com'n of City of and County of San Francisco*
   688 F.2d 615 (N.D. Cal. 1982) ...................................................................................... 21

*Pelletz v. Weyerhaeuser Co.*,
   592 F. Supp. 2d 1322 (W.D. Wash. 2009) .................................................................... 22

*Roberts v. Texaco, Inc.*,
   979 F. Supp. 185 (S.D.N.Y 1997) ................................................................................ 22

*State of California v. eBay, Inc.*,
   No. 5:12–CV–05874–EJD, 2014 WL 4273888  (N.D. Cal. Aug. 29, 2014) ................... 12

*Torrisi v. Tuscon Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ........................................................................................... 17

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ......................................................................................... 17

*Van Vranken v. Atl. Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) ......................................................................... 22, 25

*Villalpando v. Exel Direct Inc.*,
   303 F.R.D. 588 (N.D. Cal. 2014) .................................................................................. 14

*Villegas v. J.P. Morgan Chase & Co.*,
   No. CV 09–00261 SBA EMC, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ............... 13, 15

*Yamamoto v. Omiya*,
   564 F.2d 1319 (9th Cir. 1977) ....................................................................................... 17

United States Supreme Court Cases

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ....................................................................................................... 23

*Deposit Guaranty Nat. Bank v. Roper*,
   445 U.S. 326 (1980) ....................................................................................................... 23

*Eisen v. Carlisle & Jacquelin*
   417 U.S. 156 (1974) ....................................................................................................... 25

*Phillips Petroleum Co. v. Shutts*
   472 U.S. 797 (1985) ....................................................................................................... 25

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) .............................................................................................. 14, 15

**California State Supreme Court Cases**

*Richmond v. Dart Indus., Inc.*,
   29 Cal. 3d 462 (1981) .................................................................................................... 24

PLAINTIFFS' MOTIONF OR PRELIMINARY APPROVAL OF SETTLEMENT

*Vasquez v. Superior Court.*,
    4 Cal. 3d 800  (1971) ............................................................................................ 24

**State Cases**

*Bell v. Farmers Ins. Exch.*,
    115 Cal. App. 4th 715 (2004) ........................................................................ 22, 24

*Clark v. Am. Residential Serv., LLC*,
    175 Cal. App. 4th 785 (2009) ............................................................................. 22

*Dunk v. Ford Motor Co.*,
    48 Cal. App. 4th 1794 (1996) ............................................................................. 24

*Lealao v. Beneficial California, Inc.*,
    82 Cal. App. 4th 19 (2000) ................................................................................ 24

**State Statutes**

*California Labor Code* § 1174 ................................................................................. 21

*California Labor Code* § 203 ....................................................................... 13, 14, 21

*California Labor Code* § 226 ............................................................................. 20, 21

*California Labor Code* § 510 ................................................................................. 21

**California Rules of Court**

*California Code of Civil Procedure* § 1542 ........................................................... 10

**Federal Rules of Civil Procedure**

Federal Rules of Civil Procedure, Rule 23 ................................................ 12, 14, 15

**Other Authorities**

4 Albert Conte & Herbert B. Newberg, Newberg on Class Actions
    (4th ed. 2002) ................................................................................................ 12, 17

Manual for Complex Litigation (4th ed. 2004) ................................................. 12, 22

Menell, A Note on Private Versus Social Incentives to Sue in a Costly Legal System 12 J. Legal
    Stud. 41 (1983)(Menell) ...................................................................................... 23

Graham**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Jessica Jimenez and Orlando Mijos ("Plaintiffs") seek preliminary approval of a $1,250,000.00 proposed Class Action and Private Attorney General Act ("PAGA") Action Settlement Agreement ("Settlement") entered into with Defendants Menzies Aviation, Inc., Menzies Aviation Group (USA), Inc., and Aeroground, Inc. (collectively "Defendants"). [See Declaration of Graham S.P. Hollis in Support of Plaintiff's Motion for Preliminary Approval ("Hollis Decl."); Exhibit 1 to Hollis Decl.]   The Settlement, if approved, will provide a significant monetary recovery to the Class members and aggrieved employees.  The Settlement resulted after over seven years of litigation, extensive formal discovery, several depositions, and a full-day mediation conducted by Mark Rudy[1], a prominent mediator of wage and hour class actions in California.  The proposed Settlement satisfies all of the criteria for preliminary class action settlement approval under Federal law.

## II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND IN THE ACTIONS

### A.    THE *JIMENEZ* LITIGATION

Plaintiff Jessica Jimenez filed the original Complaint on June 2, 2010, alleging individual, class and representative action allegations on behalf of non-exempt employees of Defendants working at the San Francisco International Airport ("SFO").  Defendants filed a Notice of Removal on August 9, 2010. The district court did not resolve the questions of removal jurisdiction until April 8, 2013. Therefore, for reasons outside of the Parties control, this case remained in Federal Court for from August 9, 2010 to April 8, 2013 effectively stayed.  Defendants' filed their Demurrer to the Complaint soon thereafter. Defendants' Demurrer was overruled in part and sustained in the part by the court on July 8, 2013. The Court granted Plaintiff leave to amend the Complaint, and on July 17, 2013, Plaintiff Jimenez filed her First Amended Complaint ("FAC"). Defendants timely filed a Demurer to the First Amended Complaint, which the court overruled in its entirety.  Plaintiff Jimenez filed a motion seeking leave to amend her complaint to add Orlando Mijos as an additional named Plaintiff and Class Representative and to add factual allegations to the already existing causes of action, which the court granted, as

---

[1] The parties in the *Wright* litigation previously participated in two other mediations, the first one with mediator Michael Loeb and a second mediation with Mark Rudy.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

modified.   On May 1, 2015, Plaintiffs Jimenez and Mijos filed and served a Second Amended Complaint ("SAC").   Defendants filed a Notice of Removal on May 29, 2015 alleging diversity jurisdiction under 28 U.S.C. §§1332 and CAFA.   On June 5, 2015, Defendants filed a Motion to Compel Arbitration.   On August 17, 2015, the district court denied Menzies Motion to Compel Arbitration, and Defendants' appealed the district court's ruling to the U.S. Court of Appeals for the Ninth Circuit.

Plaintiff Jessica Jimenez and Orlando Mijos sought Class Certification on March 9, 2016. This Court held a hearing on the motion on April 13, 2016. After reviewing the parties' memoranda, evidence and argument, the Court found that the proposed classes met the requirements of Federal Rule of Civil Procedure 23 and granted Plaintiffs' motion for Class Certification on May 4, 2016. The parties filed and served cross Motions for Partial Summary Judgment, which were heard on December 14, 2016. The court issued an Order granting Defendants' Motion for Partial Summary Judgment, and Denying Plaintiffs' Motion for Partial Summary Judgment, on December 22, 2016.  On November 10, 2016 the Parties completed the mailing of the Class Notice.

The Parties agreed to participate in private mediation, and scheduled a private mediation session with experienced mediator Mark S. Rudy.  The Plaintiffs in this action and Plaintiff Sara Wright in the related case entitled *Wright, et al. v. Menzies Aviation, Inc., et al.*, Case No. BC441308, filed on July 15, 2010 and pending in the California Superior Court, County of Los Angles (the "*Wright Litigation*") decided to participate in a joint mediation session because both litigations allege similar legal issues and arguments. Therefore, the Parties determined that even though this action and the *Wright* litigation are two separate lawsuits, on behalf of different class members, the legal issues were the same, and for purposes of efficiency, it was in the best interests of all to engage in mediation and to resolve all the class action claims, PAGA claims and individual claims in this action and the *Wright* litigation at the same mediation. The Parties participated in a private mediation session on January 3, 2017. The parties did not reach a settlement at the day of the mediation, but agreed to continue mediation efforts.  On January 11, 2017 the parties settled the *Jimenez* and *Wright* litigation (collectively the "Actions").

## B.    THE *WRIGHT* LITIGATION

Plaintiff Sara Wright filed a class action complaint against Menzies Aviation Inc. and Menzies Aviation Group (USA), Inc. on July 15, 2010, in the Superior Court for the County of Los Angeles,

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

alleging individual, class and representative action allegations on behalf of non-exempt employees of Defendants working at the Los Angeles International Airport ("LAX"), Case No. BC441308. Defendants filed a Notice of Removal on August 25, 2010. On September 1, 2010 Defendants filed a Motion to Dismiss. The Court issued an Order remanding the case to the Superior Court of Los Angeles County for lack of subject matter jurisdiction on September 20, 2010.

Defendants' filed their Demurrer to the Complaint on January 26, 2011, which the Court overruled in its entirety. Defendants then filed a Motion for Summary Adjudication on September 22, 2011. Plaintiff Wright timely opposed and the Court denied it on January 17, 2012. The Parties entered into a Stipulation for the filing of a First Amended Complaint ("FAC"), which the Superior Court granted on February 23, 2012. The FAC modified the class definitions, and it eliminated the alternative workweek class from the Complaint. On March 28, 2012, Plaintiff filed an amendment to the Complaint adding a new defendant, Aeroground, Inc.

On June 20, 2012, Plaintiff Wright filed her Motion for Class Certification seeking Class Certification of four (4) separate classes. On July 19, 2012, The Superior Court granted Class Certification of the LAX all Locations Overtime Class, which is the equivalent of the SFO Overtime Class, this Court certified on May 4, 2016. Plaintiff Wright filed an appeal regarding the Courts ruling on the Class Certification. On November 12, 2013, the appellate court issued an opinion affirming the trial court's order in its entirety. On December 20, 2013, Appellant Wright served a petition for review to the California Supreme Court. On February 26, 2014 the Supreme Court denied the petition for review. On January 8, 2015, Defendants filed a second Motion for Summary Adjudication, which the Superior Court denied in its entirety. On January 21, 2013, and while Plaintiff Wright's appeal was pending, the parties participated in a full-day mediation session with experience mediator Michael Loeb. The mediation was unsuccessful.

Plaintiff Wright filed a Motion seeking to amend the class certification order on June 16, 2015, which the Court granted on July 14, 2015. On August 4, 2015, Defendants filed a Notice of Removal to the U.S. District Court for the Central District of California. Plaintiff Wright filed a Motion to Remand, which was granted on October 13, 2015. Defendants appealed and the U.S. Court of Appeals denied Defendants petition for permission to appeal. Defendants filed a Motion for Reconsideration and on

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

GRAHAMHOLLIS APC 3555 FIFTH AVENUE SUITE 200 SAN DIEGO, CALIFORNIA 92103

June 21, 2016, the U.S. Court of Appeals denied Menzies' motion for reconsideration.  On February 16, 2015, the parties participated in a second full-day mediation session with another experienced mediator Mark Rudy.  This second mediation was unsuccessful.

On August 11, 2016, the state court signed the Order approving the language of the Class Notice to be mailed to the Class members. The parties completed the mailing of the Class Notice on November 3, 2016. On January 6, 2017, Plaintiff Wright filed a Notice of Completion of Class Notice Procedures. The Class Notice was mailed to a total of 3,072 Class Members. The parties filed a Notice of Class Action Settlement and Joint Stipulation to Stay Proceedings Pending Approval of Class Action Settlement, which the Los Angeles Superior Court granted on March 13, 2017.  The court stayed the *Wright* litigation pending the Settlement approval procedures in this Court.

## C.    DISCOVERY COMPLETED

Class Counsel conducted a thorough investigation into the facts in the Actions, including formal and extensive pre-trial motions, a review of Defendants' documents and several depositions of Defendants' representatives, and other key witnesses. [Hollis Decl. ¶¶57-70.] Specifically, Class counsel conducted a thorough investigation into the merits of Plaintiffs' claims prior to the filing of the Complaint.  [*Id.* at ¶¶58-58.]  After the filing of the Complaints in the Actions, the parties engaged in substantial litigation and conducted extensive discovery on Plaintiffs' causes of action, including answering extensive formal discovery and conducting several depositions of Plaintiffs and other key witnesses. [*Id.* at ¶¶ 60-62.]  Plaintiffs Jimenez and Mijos both served a first set of Interrogatories and Request for Production of Documents. Plaintiff Sara Wright served two sets of Special Interrogatories and Request for Production of Documents. Plaintiff Mijos also served a Set of Request for Admissions. In response to Plaintiffs' several discovery requests, Defendants produced substantive responses, and thousnds of documents related to Menzies' workweek, overtime policies, timekeeping and payroll procedures, including all applicable Employee Handbooks for California non-exempt employees. [*Id.* at ¶63-64.]  Defendants also produced thousands of paper and electronic time and pay records for Plaintiffs and other non-exempt employees working at the LAX and SFO in California, including their time clocks, punch detail reports, payroll summary report, punch audits, and check details, among others. Class counsel reviewed and analyzed thousands of time and pay records for Plaintiffs and the different

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

sampled employees, calculated the number of days worked in a pay period and the number of minutes/hours worked, and compared them to the number of hours paid by Defendants. [*Id.* at ¶66-67.] Class counsel calculated the average rate of pay, the average number of days the putative class members worked, and the average number of days the putative class members worked more than 8 hours a day, among others. [*Id.*]  In addition, the parties took several depositions all related to Plaintiffs' PAGA and Class Action allegations in the *Jimenez* and *Wright* litigations, including the deposition of Plaintiffs Sara Wright, Jessica Jimenez, and Orlando Mijos; Menzies' agent and person designated by Menzies as the most knowledgeable regarding Defendants timekeeping and payroll practices, document retention policies, and rounding.  The parties in the *Jimenez* litigation further each retained experts who analyzed thousands of time and pay records and each expert prepared comprehensive reports that were submitted to this Court as part of the parties' respective motion for partial summary judgment. [*Id.* at ¶ 67.] Defendants retained expert Robert Crandall, and Plaintiff retained expert James R. Lackritz.  Plaintiffs deposed Defendants' experts on November 14, 2016. [*Id.* at ¶62.] Moreover, Defendants Menzies retained expert Hassan Assaf, who analyzed Menzies' timekeeping data for Menzies' hourly employees at the LAX.  The information obtained and exchanged between the parties was sufficient for the parties to make an informed decision about the resolution of this case during the January 3, 2017 mediation.

**D.     THE THIRD AMENDED COMPLAINT**

The Parties agreed to settle the *Wright* and *Jimenez* litigations on January 11, 2017.  Thus, in order to avoid duplicative Court review of the Settlement of the *Wright* litigation and the *Jimenez* litigation, the parties agree to consolidate the *Wright* and *Jimenez* litigation in this Court, by way of a conditionally-stipulated Third Amended Complaint (TAC), which was concurrently filed on May 3, 2017 at the same time this Motion was filed. [Exhibit 3 to Hollis Decl.]  The TAC does not add any new causes of action or classes.  Instead, the TAC redefines the classes already certified by this Court to consolidate the class members in the *Jimenez* and *Wright* litigations. Thus, the TAC is based on the exact same theories of liability and seeks the same legal remedies alleged in the *Jimenez* litigation, for a larger number of Class members, as it is the case of the Overtime Class, which now includes not only employees that worked at the SFO, but also employees that worked at the LAX, or a *smaller* number of Class members, as it is the case in the Waiting Time Penalties and the Itemized Wage Statement Class.

### III. SUMMARY OF SETTLEMENT TERMS PLAINTIFFS' SEEK THIS COURT TO PRELIMINARY APPROVE

#### A. SETTLEMENT AMOUNTS

1.  <u>Maximum Settlement Amount</u>: Defendants will pay the maximum amount of $1,250,000.00 in Settlement of the Actions.  This amount includes the employer's share of the payroll taxes arising out of the Settlement.  All amounts to be paid to anyone pursuant to the Settlement shall be paid out of the Qualified Settlement Fund. [Hollis Decl. ¶ 89.]

2.  <u>Net Settlement Proceeds</u>: This is the Maximum Settlement Amount less the Class Counsel's Fees and Costs Award, the Service Payment, the PAGA Payment, the Administration Costs, as approved and awarded by the Court. This amount will be distributed to the Class Members who do not timely request exclusion from the Settlement. [*Id.* at ¶ 90.] Any amounts not awarded to the Class Representatives part of the Class Representatives Service Payments, and any amounts not awarded as Class Counsel's Fees and Costs, will be allocated to the Net Settlement Proceeds and distributed to the Class Members.[*Id.*]

3.  <u>Class Members Individual Settlement Payments</u>: Class members will receive their corresponding share of the Net Settlement Proceeds, which is estimated to be $568,333.33. Class Members will not have to submit a claim form in order to participate in the Settlement and each Class Member who does not submit a Request for Exclusion will be mailed a check representing their Individual Settlement Payment.  [*Id.* at ¶ 91.]

4.  <u>Settlement Administration Costs</u>:  These are the actual and direct costs reasonably charged by the Settlement Administrator for its services in administering the Settlement, which shall not to exceed $40,000.00. [*Id.* at ¶ 92.]

5.  <u>Payment to the LWDA</u>: The parties agree to pay the sum of $20,000 for all applicable penalties under PAGA to the Labor and Workforce Development Agency ("LWDA"). Seventy five percent (75%) of this sum ($15,000) will be paid to the LWDA, and the remainder will be allocated to the Net Settlement Proceeds. [*Id.* at ¶ 93.]

6.  <u>Class Counsel Attorney's Fees and Costs</u>: Class Counsel seeks an award of fees and costs as the Court may authorize to be paid to Class Counsel for the services they have rendered and will

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

render to the Settlement Class. Class Counsel will seek, and Defendants do not oppose, an award of $416,666.66 for Class Counsel's attorney's fees in the Actions, and will seek reasonable litigation expenses actually incurred in the Actions. [*Id.* at ¶ 94.]  Plaintiffs' counsel has calculated the reasonable actual costs incurred to date in the *Jimenez* litigation in $100,000, and in the *Wright* litigation in $85,000. [*Id.* at ¶¶ 94; 141-152.]   Plaintiffs' counsel will provide detailed costs reports, and receipts as part of Plaintiffs' Motion for Attorney's Fees and Costs.  Plaintiffs have further agreed to make this Motion for Attorney's Fees and Costs available to the Class members online and free of costs on or before fourteen days before the expiration of the objection/exclusion deadline. [*Id.*]

7.   <u>Class Representatives Service Payments</u>: Plaintiffs Sara Wright, Jessica Jimenez and Orlando Mijos, in recognition of their efforts in obtaining the benefits of the Settlement, will seek a service payment not to exceed $20,000, as follows:   $10,000 to Plaintiff Wright; $6,500 to Plaintiff Jimenez and $3,500.00 to Plaintiff Mijos. [*Id.* at ¶ 90.]

**B.   SETTLEMENT CLASSES**

1.   The **Overtime Class** is defined as follows:

> All current and former hourly non-exempt employees of Defendants Menzies Aviation Inc., Menzies Aviation Group (USA), Inc. and/or Aeroground, Inc. who have worked either at the Los Angeles International Airport ("LAX") or at the San Francisco International Airport ("SFO") and who according to Defendants' records worked one or more Midnight Shifts at any time during the Overtime Class Period." Midnight shift is defined as a work period that started on one calendar day and extended beyond midnight (12:00 a.m.) into to the next calendar day. The Overtime Class Period means the period from June 2, 2006 through December 22, 2016 for the current and former hourly non-exempt employees of Defendants Menzies Aviation Inc., Menzies Aviation Group (USA), Inc. who worked at the SFO, or the period of July 15, 2010 through December 22, 2016 for the current and former hourly non-exempt employees of Defendants Menzies Aviation Inc., Menzies Aviation Group (USA), Inc. and/or Aeroground, Inc. who have worked at the LAX. [Hollis Decl. ¶86.]

2.   The **Waiting Time Penalties Subclass** is defined as follows:

> Any member of the Overtime Class, as defined herein, who terminated his or her employment at any time from July 15, 2007 to December 22, 2016 (if they worked at the LAX), or from June 2, 2007 to December 22, 2016 (if they worked at the SFO), who as of the date of Preliminary Approval has not released their claims under the Labor Code section 201, 202 or 203, and who pursuant to Defendants' records and the analysis performed by Defendants' expert(s) in the Actions, would have received an

additional amount of overtime premium wages at the moment of separation of employment if his or her wages would have been calculated using the workweek Defendants designated in the employee handbook rather than the shift-based method Defendants used to calculate overtime wages owed.  [Hollis Decl. ¶87.]

3.      The **Itemized Wage Statement Class** is defined as follows:

"All current and former non-exempt employees of MENZIES AVIATION, INC. and/or MENZIES AVIATION GROUP (USA), INC., who were employed at the San Francisco International Airport at any time from June 2, 2009 to January 1, 2012 who received one or more wage statements that according to Defendants' records did not list the applicable rates of pay for the Lead hours worked and/or did not state the number of hours worked in a Lead position and for which they received Lead premium pay in addition to their regular rate of pay."  [Hollis Decl. ¶88.]

**C.      CALCULATION OF SETTLEMENT CLASS MEMBERS' INDIVIDUAL AWARDS**

The Settlement Administrator shall have the obligation to calculate the amounts of Individual Settlement Payments in accordance with the methodology set forth in the Settlement.  Each Class Member who does not submit a Request for Exclusion will be mailed a check representing their Individual Settlement, which shall be calculated by the Settlement Administrator as follows:

1.      <u>Overtime Class Members</u>-The Overtime Class Settlement Allocation, which represents 70% of the Net Settlement Proceeds, will be divided among all Overtime Class Members in accordance with their respective number of workweeks in which they work at least one shift that started on one calendar day and extended beyond midnight (12:00 a.m.) into the next calendar day ("Midnight Shift").  Only if the Class Member worked a Midnight Shift on a particular workweek, that workweek will be counted and added to the workweeks the Class Member worked for purposes of calculating their individual settlement payment ("Qualifying Workweeks"). [Hollis Decl. ¶ 99.]   For the time period of April 4, 2008 to December 22, 2016 (for the Class Members that worked at the SFO) and of January 1, 2010 to December 22, 2016 (for the Class Members that worked at the LAX), Defendants will use the available electronic time records to calculate the exact number of workweeks each one of the Overtime Class worked one or more Midnight Shift(s) and provide this information to the Settlement Administrator who will calculate the Class Members' individual settlement amounts based on the ratio of the number of qualifying workweeks that he or she worked to the total number of qualifying

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

workweeks that all participating Overtime Class members worked from June 2, 2006 to December 22, 2016 (if the Class Member worked at the SFO) or from July 15, 2010 through December 22, 2016 (if the Class Member worked at the LAX).  For any Class Member that worked at any time prior to April 4, 2008 (for those that worked at the SFO) or prior to January 1, 2010 (for those that worked at the LAX), the Settlement Administrator will use an estimated number of Qualifying Workweeks. [Hollis Decl. ¶ 100.]

2.    <u>Itemized Wage Statement Class Members</u>- The Itemized Wage Statement Settlement Allocation, which represents 15% of the Net Settlement Proceeds, will be divided among Itemized Wage Statement Class Members, based on the number of pay periods each Class Member received Lead Premium Pay from June 2, 2009 to January 1, 2012.  Defendants have already calculated the number of pay periods each one of the Itemized Wage Statement Class Members worked and received Lead Premium Pay, and upon preliminary approval they will provide this information to the Settlement Administrator who will calculate the Class Members' individual settlement amounts based on the ratio of the number of pay periods that he or she received Lead Premium Pay to the total number of pay periods that all participating Itemized Wage Statement Class Member received Lead Premium Pay.  [*Id.* at ¶ 101.]

3.    <u>Waiting Time Penalties Class Members</u>- The Waiting Time Penalties Class Settlement Allocation, which represents 15% of the Net Settlement Proceeds, will be divided equally among all participating members. [*Id.* at ¶ 102.]

**D.    SCOPE OF THE RELEASE**

1.    <u>Class Members Release</u>. Upon Final Approval by the Court of the Settlement, Class Members will release and discharge all released parties from any and all claims alleged in the Third Amended Complaint and/or any of the previous operative Complaints, including but not limited to claims pursuant to the California Labor Code, the California Private Attorneys General Act, Industrial Welfare Commission Wage Orders, the California Business & Professions Code, and/or contract law that are based on, directly related to, or were or could have been pled that are based on the factual allegations alleged in the Actions, and includes any and all wage-and-hour claims, rights, demands, liabilities and causes of action of every nature and description, whether in the nature of wages, overtime,

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

premium pay, statutory penalties, civil penalties, liquidated damages, punitive damages, attorneys' fees, costs, interest, or injunctive relief or other remedies, arising from or related to the claims or derivative claims asserted in the Actions. [Ex. 1 to Hollis Decl., ¶ 2.6]

2.   <u>Class Representatives Release</u>. Class Representatives' Service Awards are for their services and assistance to the Class and additionally, in recognition for their willingness to provide full and separate general releases of all claims regardless of whether such claims have been alleged against Defendants, including without limitation known or unknown claims, whether for economic damages, non-economic damages, punitive damages, restitution, tort, contract, penalties, injunctive or declaratory relief, attorney's fees, costs, or other monies or remedies. [Ex. 1 to Hollis Decl., ¶ 5.4.2] Furthermore, Class Representatives shall release, acquit and discharge the released parties from all claims against the released parties of any kind whatsoever, whether known or unknown, that arose, accrued or took place at any time on or prior to the date on which the full and general release is executed, and expressly waive the benefit of Section 1542 of the California Code Civil Procedure. [*Id.*]

## E.   ALLOCATION OF UNCLAIMED FUNDS

If after 180 calendar days from the date the Settlement Administrator completed the mailing, the checks cashed by Class Members total less than 100% of the Net Settlement, the amount remaining will be redistributed among those Class Members who cashed the checks, as long as the cost of re-mailing is less than the amount left for redistribution. If the cost of re-mailing is more than the amount left for redistribution, then the amount remaining of the Net Settlement Proceeds shall be distributed to the Department of Industrial Relations.

## F.   ADMINISTRATION OF THE SETTLEMENT AND NOTICE PROCEDURE

The Parties have selected CPT Group, Inc. to serve as the Settlement Administrator, who has represented the costs will not exceed $40,000.00. [Hollis Decl. ¶ 92] The Settlement Administrator will disseminate the Class Notice to the Class Members. [Ex. 1 to Hollis Decl. ¶ 8.4]  Defendants will provide the data to the Settlement Administrator pertaining to members of the Classes within 45 business days from the date of entry of the order granting Preliminary Approval. [*Id.* p. 19, ¶ 8.2) Within 15 calendar days following the receipt of the data from Defendants, the Settlement Administrator will mail the Class Notice to each member of the Settlement Class via first class U.S. mail. [*Id.*]

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

Prior to mailing, the Settlement Administrator will take reasonable steps to ensure that the Notice Packet is sent to all Class Members. Therefore,  prior to the mailing of the Notice to the Class Members, the Settlement Administrator will run one Accurint (or substantially similar) skip trace as well as perform one basic search on the National Change of Address Database to attempt to obtain the best possible address for the Class Members before it mails the notices. [*Id.* at ¶ 8.3] If any Notice Packet is returned to the Settlement Administrator as undeliverable within the 45-calendar day deadline, the Settlement Administrator shall make all reasonable efforts to locate a forwarding addresses, including performing a skip-trace using that Class Member's social security number and shall re-mail the Notice. (*Id.* at ¶ 8.5)  Those Class Members who receive a re-mailed Notice Packet will have between the later of (a) an additional ten (10) days or (b) the original deadline set forth on the Notice (whichever is later) to postmark an exclusion or an objection to the Settlement.

Class Members who wish to exclude themselves from the Settlement must submit a Request for Exclusion postmarked by the Objection/Exclusion Deadline. The Objection/Exclusion Deadline is 45 calendar days following the initial mailing of the Notice. Any Class Member who properly requests exclusion using this procedure will not receive any payment from the Settlement and will not be bound by the Stipulation of Settlement or have any right to object, appeal or comment thereon. Class Members who do not submit a valid and timely Request for Exclusion shall be bound by all terms of the Stipulation of Settlement and any judgment entered in the Actions once the Settlement is approved by the Court.  At least ten (10) days prior to the final approval hearing, the Settlement Administrator shall provide counsel for the parties with an accounting of the Class Maximum Settlement Amount and report the amount of all payments to be made to each Class Member by employee number.  Upon completion of administration of the Settlement, the Settlement Administrator will provide a written declaration under oath to certify such completion of the Settlement Administration to the Court and counsel for all parties.

## IV.   LEGAL STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS

The law favors settlement, particularly in class actions and other complex litigation cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.  *See* 4

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

Albert Conte & Herbert B. Newberg, Newberg on Class Actions ("4 Newberg (4th ed. 2002)") § 11:41 (4th ed. 2002). Federal Rule of Civil Procedure 23 states that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Judicial proceedings under Federal Rules of Civil Procedure, Rule 23, have led to a defined procedure and specific criteria for settlement approval in class action settlements, as described in the Manual for Complex Litigation (Fourth) ("Manual") §§ 21.63, *et seq*. (2004). Thus, courts consistently use settlement approval procedures that consist of three distinct steps: (1) preliminary approval of the proposed settlement at an informal hearing; (2) dissemination of the Notice of the Settlement to all affected class members; and (3) a "formal fairness hearing," at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented. Manual §§ 21.632, 21.633, 21.634.

The district court's role in evaluating a proposed settlement is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir.1998); *see also In re TD Ameritrade Account Holder Litig.*, No. C 07–2852 SBA, 2011 WL 4079226, at *4 (N.D. Cal. Sept. 13, 2011).

Courts in this district have held that "[a] preliminary approval of a settlement and notice to the proposed class is appropriate if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class…" *State of California v. eBay, Inc.*, No. 5:12–CV–05874–EJD, 2014 WL 4273888, at *5 (N.D. Cal. Aug. 29, 2014). (internal quotations omitted). The Court need find only that the settlement falls within the range of possible final approval, also described as the "reasonable range." See *In re Traffic Exec. Ass'n-E. Railroads*, 627 F.2d 631, 633-34 (2d Cir. 1980). Furthermore, courts must give "proper deference to the private consensual decision of the parties," since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027 (citation omitted).  Other factors in evaluating the fairness of the settlement include "(1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09–00261 SBA EMC, 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012).

## V.   LEGAL ARGUMENTS

### A.   THE PROPOSED SETTLEMENT CLASSES SATISFY RULE 23 BECAUSE THEY REMAIN THE SAME OR ARE SUBSET OF THE CLASSES ORIGINALLY CERTIFIED BY THIS COURT

Plaintiffs seek preliminary approval of a Class Action Settlement on behalf of three Settlement Classes, one of which, the "Overtime Class" remains the same to the one this Court and the Los Angeles Superior Court previously certified as a Class. The other two Settlement Classes present the same common issues of law and fact, but have been narrowed for purposes of Settlement to include (1) only those member whose class action claims have not been dismissed by this Court (the Itemized Wage Statement Class who worked on Lead positions and received Lead Premium Pay), and (2) those employees who, if Plaintiffs were to appeal the Court's ruling on the parties' motion for summary judgment and win the appeal, would have a better chance to receive Labor Code section 203 because their claims had not been previously released and Defendants' records show they would have been eligible to receive an additional amount of overtime premium wages at the moment of separation if his or her wages would have been calculated using the workweek Defendants designated in the employee handbook rather than the shift-based method Defendants used to calculate overtime wages owed. Moreover, Defendants do not dispute, for settlement purposes only, that the Settlement Classes are sufficiently ascertainable, numerous, common questions of law and fact predominate, and that all three Class Representatives are typical and adequate.  Therefore, and for all the same reasons this Court granted Class Certification on May 4, 2016, the Settlement Classes satisfy Rule 23 requirements.

/ / /

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

### 1.    The Settlement Classes Contain Numerous Members

The numerosity requirement is met if the class is so large that joinder of all members would be impracticable. *See Gay v. Waiters' & Dairy Lunchmen's Union Local No. 30*, 489 F. Supp. 282 (N.D. Cal. 1980), *aff'd* 694 F.2d 531 (9th Cir. 1982). Here, Menzies' records show, and the parties have identified to date, approximately 2,532 members of the Overtime Class, approximately 742 members of the Waiting Time Penalty Subclass, and 154 members of the Itemized Wage Statement Class. [Hollis Decl. ¶ 70] Thus, the Settlement Classes are sufficiently numerous. *See Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 605-06 (N.D. Cal. 2014).

### 2.    Common Questions of Law Exists As to the Settlement Class Members

The requirement of commonality demands that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, the common question "must be of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). For purposes of Rule 23(a)(2), "even a single common question will do." *Id.* at 2556 (internal modifications omitted).  Here, just as before, all members of the Overtime Class (irrespective of whether they worked at the LAX or SFO) were covered by the same Handbook and they have the same legal issue alleged—whether Menzies's policy of paying its non-exempt employees based on its variable workday/workweek policy, and not necessarily in accordance with the workweek as designated in the employee handbook, properly compensates class members pursuant to California law.  The Waiting Time Penalties Subclass remains a derivative claim of the Overtime Class. However, Plaintiffs have further narrowed this subclass to only include those Overtime Class members that may have a better chance to prove the existence of a Labor Code section 203 penalties claims at the end of their employment because at the end of their employment they would have received less using Menzies' variable workweek.  This definition acknowledges Menzies' strong defenses against liability even if Plaintiffs were to file and win an appeal of this Court's ruling.  Finally, the Itemized Wage Statement Class is substantially the same as defined in the SAC and certified by this Court, and includes only class members' claims that would potentially move forward if the parties had not reached this Settlement.  Therefore, the commonality requirement is satisfied.

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

### 3. All Class Representatives Are Typical And Adequately Represent The Settlement Classes

The typicality requirement of Rule 23(a)(3) assures that the interests of the named representatives align with the interests of the rest of the class. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* at 508 (internal quotation marks omitted). Here, Plaintiffs and Class Representatives Jessica Jimenez, Orlando Mijos and Sara Wright have suffered the same or similar injury than those alleged on behalf of the Settlement Classes. Plaintiffs' claims are typical of the classes as defined herein because they arise from Menzies' universally-applied policies and procedures concerning the payment of wages and the calculation of overtime wages. [Hollis Decl. ¶ 73.] Plaintiffs and Class Counsel have demonstrated their commitment to vigorously prosecuting the case on behalf of the Settlement Classes. [Hollis Decl. ¶¶ 133-136] All Plaintiffs have spent significant amounts of time and made personal sacrifices to act as the named Plaintiffs in this case. [Jimenez Decl. ¶¶ 14-21; Mijos Decl. ¶ 11; Wright Decl. ¶¶ 19-24, 27-29, 37] They have contributed extensively by attending in-person meetings, participating in multiple phone conferences, providing valuable factual information and documentation, partaking in written discovery, participating in a long depositions, participating in a mediation(s), and undertaking necessary steps to protect the best interests of the class at all times. [*Id.*]

### B. THE PARTIES REACHED THE CLASS SETTLEMENT AS A RESULT OF NON-COLLUSIVE, ARMS LENGTH NEGOTIATIONS

Federal courts consider whether the proposed settlement agreement (1) appears to be the product of serious, informed, non-collusive negotiations; (2) "does not improperly grant preferential treatment to class representatives or segments of the class," and (3) contains any "obvious deficiencies" prior to granting preliminary approval. *See Wal-Mart Stores, Inc.*, 2014 WL 4273888, at *5; *Villegas*, 2012 WL 5878390, at *6. Here, there is no doubt that the proposed Settlement meets all these factors. Here, the parties negotiated the proposed Settlement in good faith and at arms-length, assisted by a competent mediator. [Hollis Decl. ¶¶57-82.] In reaching the Settlement, counsel on both sides relied on their respective substantial litigation experience in similar employment class actions, and thorough analysis of

the legal and factual issues presented in this case, including the use of one neutral and two retained experts. [Hollis Decl. ¶¶ 24, 57-62, 67, 74, 87.] These informed hard-fought negotiations resulted in the proposed Settlement.

### C. PLAINTIFFS CONDUCTED A THOROUGH INVESTIGATION OF THE CLAIMS

Settlement discussions between the parties resulted only after exchanging substantial relevant information, conducting years of formal discovery, after this Court and the state court had granted Class certification, after this Court had ruled on the parties' respective motions for summary adjudication, and after extensive, arms-length negotiations under the supervision of an experienced mediator. [Hollis Decl. ¶ 94.]  Thus, the parties conducted a thorough investigation into the merits of Plaintiffs' claims prior to entering into the Settlement. The information obtained and exchanged between the parties was sufficient for the parties to make an informed decision at the mediation about the resolution of this case. [*Id.* at ¶¶57-70.] It was after several years of litigation, full-day mediation, post-mediation negotiations and settlement conferences, and the review of calculations and valuations of each claim by counsel for both parties and the mediator, and after consideration of all the risks of continuing litigation, that the parties agreed to accept the $1,250,000.00 in settlement.

### D. THE SETTLEMENT HAS NO OBVIOUS DEFICIENCIES AND DOES NOT GRANT IMPROPER PREFERENTIAL TREATMENT TO PART OF THE CLASS OR THE CLASS REPRESENTATIVES

The Settlement provides the fairest way to distribute the Settlement proceeds to Class members, which is to calculate each class member's share of the Net Settlement Proceeds based on the number of qualifying workweeks worked by each Class member during the Class Period.  [Hollis Decl. ¶¶ 98-104.] Thus, each one of the Class members shall be entitled to receive a pro-rata portion of the Net Settlement Proceeds available for distribution based upon his or her respective number of qualifying work weeks. This means, for example, that the Class members that have the larger number of pay periods in which they received Lead premium pay, would receive a larger portion of the Itemized Settlement Class allocation.  Similarly, the Class members who worked more midnight shifts would be entitled to a larger portion of the Overtime Class Allocation than those who worked less. Thus, all Settlement Class members are treated equitably and fairly.  [*Id.*]  The Settlement further allocates to each Class an amount

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

1  that compares to the realistic values of the Claims. [*Id.* at ¶105.]

2  **E.    THE SETTLEMENT PROVIDES FOR REASONABLE, FAIR AND ADEQUATE**
3  **RELIEF TAKING INTO CONSIDERATION THE SIGNIFICANT RISKS OF**
   **FURTHER LITIGATION**

4      The law favors settlement, particularly in class actions and other complex cases. See 4 Newberg
5  §11:41, at pp. 87-88 (and cases cited therein); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276
6  (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp*., 529 F.2d 943, 950 (9th Cir. 1976). These concerns
7  apply in this action where the alleged practices affected more than thousand employees. [Hollis Decl.
8  ¶¶70,73.] To grant preliminary approval of this settlement, the Court need find only that the Settlement
9  falls within the range of possible final approval as the Court will make a final determination on
10 adequacy at the final approval hearing *See, e.g., In re Traffic Exec. Ass'n – E.R.R.*, 627 F.2d at 633-34; 4
11 Newberg § 11.25.  The Court thus has broad powers to determine whether a proposed settlement is fair
12 under the circumstances of the case. *See Torrisi v. Tuscon Elec. Power Co*., 8 F.3d 1370, 1375 (9th Cir.
13 1993); *Acosta v. Trans Union LLC*, 243 F.R.D. 377, 384 (C.D. Cal. 2007) (citing *Yamamoto v. Omiya*,
14 564 F.2d 1319, 1325 (9th Cir. 1977)).  Preliminary approval of a settlement should be granted unless
15 there are specific reasons to doubt its fairness making it clear it would not ultimately weather a final
16 approval hearing. See *In re Prudential Sec., Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y.
17 1995).

18     Here, the proposed Settlement falls well within the range of reasonableness, because it provides
19 for fair and immediate substantial monetary relief to the Settlement Class.  In exchange, the Settlement
20 Class will only release those claims alleged in the Complaint. See *Boyd v. Avanquest N. Am. Inc*, No.
21 12-CV-04391-WHO, 2015 WL 4396137, at *5 (N.D. Cal. July 17, 2015); *Custom LED, LLC v. eBay,*
22 *Inc*, No. 12–CV–00350–JST, 2013 WL 6114379, at *7 (N.D. Cal. Nov. 20, 2013).

23     **1.    This Court Analyzed the Merits of the Plaintiffs' Class Action Claims, and**
24     **Dismissed All But the Itemized Wage Statement Claims**

25     Although Plaintiffs maintain their claims are meritorious, and believe the issue would have been
26 resolved differently if taken on Appeal, Plaintiffs acknowledge that Defendant possessed legitimate
27 defenses to liability in the Actions. [Hollis Decl. ¶109-10.] This Court has already ruled on the merits of
28 most of Plaintiffs' class action causes of action as part of the parties' Motions for Partial Summary

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

1  Judgment, and agreed with Defendants.  The court issued an Order granting Defendants' Motion for

2  Partial Summary Judgment on December 22, 2016. [Dkt. No. 76]  Defendants' moved for partial

3  summary judgment on four of the six Class action causes of action.  Thus, this Court adjudicated the

4  Second (unpaid overtime), Third (waiting time) and Sixth (UCL) Causes of Action in favor of Menzies

5  in full.  [Dkt. No. 76.] The Fourth Cause of Action (wage statements), to the extent it is based on

6  plaintiffs' inclusive dates and overtime theories, was also adjudicated in favor of Menzies. [*Id.*] The

7  Fourth Cause of Action survived to the extent it relies on the Lead pay issue. The Seventh Cause of

8  Action for PAGA penalties, to the extent it is derivative of the Second, Third and Sixth Causes of

9  Action, and the inclusive dates and overtime theory of Fourth Cause of Action, was also adjudicated in

10  favor of Menzies. [*Id.*]

11        **2.     The Risk, Expense, Complexity and Duration of the Further Litigation
                Weighs in Favor of Preliminary Approval of the Settlement**

13        The recovery of a $1,250,000.00 Settlement for the Class is an extremely fair result, considering

14  all the significant risks of further litigation, the likelihood of further years of delay on Appeal, the risks

15  of maintaining class action status through trial and after appeal, the stage of the proceedings, and the

16  likelihood of prevailing on the merits on Appeal and then recovering 100% of the damages claimed.

17  [Hollis Decl. ¶¶ 120-132.]

18             *a.     Absent Approval of the Settlement, the Parties Will Necessarily Engage in*

19                   *Costly and Protracted Litigation*

20        Although the parties had engaged in a significant amount of investigation, formal discovery and

21  class-wide data analysis, the parties are far from completing formal written discovery.  For example, the

22  parties have not formally completed and exchanged all experts' reports in the *Wright* or *Jimenez*

23  litigation; taken expert depositions, and concluded damages' analysis for any of the certified classes that

24  will move forward to trial in the Actions. [Hollis Decl. ¶¶121-122.]   Moreover, there is always the

25  possibility of the Defendants filing additional motions for class decertification in the Actions. [*Id.*]

26        Moreover, the parties would have to prepare for two separate Class and PAGA Action trials (one

27  here and one in the Los Angeles Superior Court), and prepare and defend several motions in limine. [*Id.*

28  at 123] After trial, both parties have already decided they will submit appeals.  Thus, the parties will

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

have to engage in expensive and protracted appellate practice, in two separate Courts of Appeals, Defendants to dispute the granting of the class certification ruling for Plaintiffs in the Actions, and Plaintiffs to dispute the granting of Partial Summary Judgment in Defendants' favor. [*Id.*] As a result, the parties would incur considerably more attorneys' fees and costs through trial.  This settlement avoids all those risks, and the accompanying expense, and instead provides immediate and substantial monetary relief. *See, e.g., In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138-VRW, 2007 WL 4171201 at *3 (N.D. Cal. Nov. 26, 2007) (noting that the "inherent risks of proceeding to summary judgment, trial, and appeal also support the settlement"). The Settlement here commits Menzies to create a Settlement Fund of $1,250,000.00 to compensate class members for their alleged damages, and compensate counsel for their fees and costs in the litigation.  In contrast, continued litigation would be costly and time consuming, and appeal from the class certification decision and appeal from any judgment in Plaintiffs and Defendants favor would likely occur.  Such efforts would likely result in a delay of several years before this case could finally be resolved and the Settlement Class receives any compensation.

> b.    *The Amount Offered in Settlement Given the Realistic Value of the Claims Favors Preliminary Approval of the Settlement*

The Settlement provides a real and substantial benefit to the Class Members considering the highly disputed nature of the claims in the Actions.

1.    <u>Itemized Wage Statement Claims</u>.  After reviewing the records, Plaintiffs calculated each of the pay periods, each of the Class members received Lead Premium Pay but the wage statements did not include the number of hours and the corresponding rate. Hollis Decl. ¶ 74-75 Plaintiffs assumed a 100% violation rate ($100 per pay period), and multiplied each pay period for the maximum penalty applicable.  Plaintiff calculated the total damages in $102,000.00. [*Id.*] Plaintiff discounted the claim $102,000 amount by 10% to account for an adverse merits ruling prior to trial, given Defendants' strong defenses, and further discounted that amount by 10% to account for the likelihood of the success at trial and after appeal. [*Id.*] Thus, Plaintiffs calculated the realistic value of the class claims in $82,620.00. The Settlement guarantees that the Class members will receive significant monetary recovery for this claim.  Specifically, the Settlement allocates 15% of the Net Settlement Proceeds, which is estimated in a total of $85,250.00 (15% * $568,333.33). [*Id.*]  This amount will be divided pro rata among all

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

members of the Class, depending on each class member's respective pay periods in which they received Lead premium pay. Therefore, the Settlement provides an amount that is *greater* than the amount realistically estimated for this Class for their Labor Code 226 claims. [*Id.*]

2.   <u>Overtime Class and Waiting Time Penalties Subclass</u>: Using the data produced by the neutral expert, Plaintiffs further determined the number of "neutral" pay periods vs. the number of pay periods in which there was a loss using the designated workweek in the Employee Handbook.  [*Id.*] Then, using the assistance of a retained expert, Plaintiffs calculated the average amounts of unpaid overtime hours per pay period during allegedly neutral pay periods, the average amounts of unpaid overtime hours per pay period during pay periods in which there was a loss using the designated workweek vs. the variable workweek. [*Id.*] Thus, Plaintiffs calculated the unpaid overtime claim by multiplying the average number of hours lost by the number of pay periods during the Class period to reach the amount of $1,235,000.00 in unpaid overtime wages. [*Id.*] For the waiting time penalties, Plaintiffs assumed the maximum 30-day amount for all the putative Class members, for an amount of $1,415,000.00. [*Id.*]  Plaintiff discounted the value of the Overtime and Waiting Time Penalties Claims by 55% and 65%, respectively, given this Court's adverse merits ruling and the likelihood of success on Appeal. [*Id.*] Plaintiff then further discounted the claims by 30% and 80% to account for the likelihood of a favorable merits ruling after trial and appeal, given Defendants' strong defenses.  Thus, Plaintiffs realistic value of the overtime and waiting time penalties claim is $389,025 and $99,050, respectively. [*Id.*]    The Settlement in the case guarantees Defendants will allocate 70% of the Net Settlement Proceeds to the Overtime Class (which is the largest class) and 15% to the Waiting Time Penalties Class, or approximately $397,833.33 to the Overtime Class and $85,250 to the Waiting Time Penalties Class. [*Id.*]   The Settlement provides *immediate* recovery for the Class, and avoids the expense of preparing and participating in a Class Action Trial and the risks of losing the Appeal. [*Id.*]   Plaintiffs predicted that the realistic total recovery for the Settlement Class would be approximately $2,752,000.00 for the overtime claims, wage statement claims and the waiting time penalties claims. [*Id.* at ¶75.]  The Settlement secures Defendants will pay 1,250,000.00, of which approximately $568,333 will go to the Class. [*Id.* at ¶75.]

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

With respect to PAGA Penalties, Plaintiffs estimated a total PAGA exposure of approximately $32,700,000 for the alleged violations of Labor Code sections 510, 226, and 203, and for the alleged failure to maintain accurate records (Labor Code section 1174). [*Id.* at ¶77.]  Since only 25% of this total would go to the aggrieved employees, Plaintiffs used $8,178,164 and then discounted that figure by 60% for a risk of losing on the merits and by an additional 50% for the risk of the Court reducing penalties, to arrive at a projected total of approximated $1,600,000.  [*Id.*] *See, e.g., Fleming v. Covidien*, No. ED CV 10-01487 RGK (OPX), 2011 WL 7563047 (C.D. Cal. Aug. 12, 2011), Document 236, filed August 12, 2011, at p. 5 (reducing PAGA penalties from $2.8 million to $500,000).

The proposed settlement of $1.25 million therefore represents a substantial recovery when compared to Plaintiffs' reasonably forecasted recovery. [*Id.*]  It is well established that settlement offers that constitute only a fraction of the potential recovery do not preclude a court from finding that the settlement offer is fair.  *See Hanlon*, 150 F.3d at 1027; *Officers of Justice v. Civil Service Com'n of City of and County of San Francisco*, 688 F.2d 615, 628 (N.D. Cal. 1982). Courts have found settlements for substantially less than the plaintiffs' claimed damages were fair and reasonable, especially when taking into account the uncertainties involved in litigation. *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (finding settlement 16% of the potential recovery to be reasonable); *In re Omnivision Techs.*, Inc., 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement that constituted 6% of the maximum potential damages).  Given the litigation risks involved, and the high probability that this litigation continue for several years, the proposed settlement is well within the realm of being fair, reasonable, and adequate because it guarantees class members will be compensated now.

**F.    THE SERVICE AWARDS AND THE ATTORNEY'S FEES AND COSTS PROVISION FALL WELL WITHIN THE RANGE OF REASONABLENESS**

**1.    Courts Routinely Award the Class Representatives A Service Award**

Courts routinely approve service awards to compensate named plaintiffs for the services they provide and the risks they incur during the course of the class litigation.  *Ingram v. The Coca- Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (quoting *In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)); see also *Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 726 (2004) (upholding "service payments" to Named Plaintiffs for their efforts in bringing class case); *Pelletz v. Weyerhaeuser Co.*, 592

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

F. Supp. 2d 1322, 1329 (W.D. Wash. 2009) (noting that such awards "may be merited for time spent meeting with class members, monitoring cases, or responding to discovery") (quoting Manual § 21:62 n.971); Manual § 21:62 n.971 (noting that service awards are warranted). In approving incentive awards, courts frequently approve awards of $5,000 or more. The factors courts use in determining the amount of service awards include: (1) a comparison between the service awards and the range of monetary recovery available to the class (see, e.g., *Clark v. Am. Residential Serv., LLC*, 175 Cal. App. 4th 785, 805 (2009); *Ingram*, 200 F.R.D. at 694; *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 204 (S.D.N.Y 1997)); (2) time and effort put into the litigation (see, e.g., *Clark*, 175 Cal. App. 4th at 804-05;*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995); *Cook v. Neidert*, 142 F.3d 1004, 1016 (7th Cir. 1998)); (3) whether the litigation will further the public policy underlying the statutory scheme (see e.g., *Roberts*, 979 F. Supp. at 201 fn. 25); and (4) risks of retaliation (see e.g., *Roberts*, 979 F. Supp. at 202; *Cook*, 142 F.3d at 1016). All these factors support the service award Plaintiffs request this Court to preliminary approve.

Plaintiffs assisted counsel with the investigation of the claims, preparation of the complaints, provided relevant documents, and worked with Class Counsel throughout the case, as detailed in the supporting declaration filed concurrently with this motion. [Hollis Decl. ¶¶ 133-140; see also Wright Declaration, Jimenez Declaration and Mijos Declaration filed concurrently herewith.]   Plaintiffs were crucial in the prosecution of the Actions, as they actively participated in case development and settlement negotiations and produced relevant documents in this case. [Hollis Decl. ¶¶133-135.]   All Plaintiffs communicated regularly with their attorneys.  They spent significant hours discussing with Ms. Cordero the facts related to their employment with Menzies, including discussing their job duties, schedules, job responsibilities and Menzies' company policies relating to the payment of regular and overtime wages, among others. [Wright Declaration, Jimenez Declaration and Mijos Declaration filed concurrently herewith.]   Moreover, Plaintiffs, in agreeing to bring this action, formally agreed to accept the responsibilities of representing the interests of all Class Members, and to assume risks and potential costs that were not specifically agreed to by other Class Members in this case, including the risk of paying costs to Defendants. Finally, Defendants do not oppose payment of $20,000 as a service award to Plaintiffs.

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

### 2. The Significant Amount of Work Performed by Class Counsel Supports the Request for Attorney's Fees and Reimbursement of Actual Costs

There has been an extraordinary amount of work performed by Plaintiffs' Counsel in the Actions, including conducting extensive research, investigation and analysis of each potential cause of action. [Hollis Decl. ¶¶13-70.] Class Counsel is highly experienced in wage and hour matters and class action cases, and has been appointed class counsel in numerous employment class action cases. [Hollis Decl. ¶¶7-12; Ex. 4 to Hollis Decl.] Additionally, Class Counsel has committed and continues to commit significant financial and staffing resources to the representation of the Class Members. [Hollis Decl. ¶¶ 13-70; 141-150.] Class Counsel's work resulted in the Settlement which provides significant benefits to class members.

Our legal system greatly relies on private litigants to enforce substantive provisions of law through class actions, especially Labor Code wage and hour provisions. Therefore, Courts recognize that an attorney providing the essential enforcement services must be provided incentives comparable to those negotiated in the private bargaining that takes place in the legal marketplace. *Deposit Guaranty Nat. Bank v. Roper*, 445 U.S. 326, 338 (1980); Menell, A Note on Private Versus Social Incentives to Sue in a Costly Legal System 12 J. Legal Stud. 41 (1983)(Menell). It has therefore been urged (most persistently by Judge Richard Posner) that in defining a "reasonable fee" in such representative actions the law should "mimic the market."

The common fund doctrine rests on the commonsense notion that attorneys should normally be paid by their clients, and that unless attorneys' fees are paid out of the common fund, those who benefited from the fund without contributing would be unjustly enriched while the client who created the fund faces the possibility of receiving no benefit because his recovery might be consumed by expenses. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Awards of common fund fees are also essential to furthering the important societal goal of attracting competent counsel to handle class actions, which California courts recognize as an important, necessary and desirable tool for assuring the effective enforcement of the Labor Code and minimum labor standards. *See, e.g., Vasquez v. Superior Court.*, 4 Cal. 3d 800, 807 (1971) (class action justified to prevent "random and fragmentary enforcement" of employer's legal obligations); *Richmond v. Dart Indus., Inc.*, 29 Cal. 3d 462, 473 (1981) ("this state has

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

a public policy which encourages the use of the class action device"); *Bell,* 115 Cal. App. 4th at 741 ("By preventing a failure of justice . . . the class action not only benefits the individual litigant but serves the public interest in the enforcement of legal rights and statutory sanctions.") [citation omitted]. Because our legal system relies upon private litigants "to enforce substantive provisions of law through class and derivative actions, attorneys providing the essential enforcement services must be provided incentives roughly comparable to those negotiated in the private bargaining that takes place in the legal marketplace, as it will otherwise be economic for defendants to increase injurious behavior." *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 47 (2000).  Substantial fee awards in successful cases encourage meritorious class actions, thereby promoting private enforcement of, and compliance with, the law.

This common fund approach is especially suitable where, as here, a readily ascertainable (indeed, fixed) settlement fund is available. *See Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1808-09 (1996). Under the terms of the Settlement, Class Counsel may seek attorneys' fees of up to $416,666.66 and actual and reasonable litigation costs.  This fee request represents 33% of the Maximum Settlement Sum.  Class Counsels' fees and costs request is very fair and reasonable in light of the time, money and effort invested in this case to date, which far exceeds the amount requested. [Hollis Decl., ¶¶141-153.] To date, Class Counsels' combined loadstars in the actions exceed **$2,396,592.20** ($1,517,270.65 loadstar in *Wright*, and $879,321.55 loadstar in *Jimenez*). [*Id.* at ¶¶ 146;150-152.] Nonetheless, Class counsel has agreed to only seek $416,666.66, which represents only 17% of the value of the services actually rendered in this case. [Hollis Decl. ¶ 146.] As will be explained further in the fee motion that will be filed along with the final approval motion, the requested fees and costs are extremely reasonable and Defendants do not oppose Class Counsels' request. Class Counsel has had to divert many of its resources to this case contending with Menzies' vigorous defense and voluminous documents in order to effectively prosecute and settle this action. Accordingly for purposes of this Motion, and as will be explained in detail in the fee application, the requested fee amount falls well within the range of reasonableness considering that case law supports a fee award as high as 50% on common law settlement funds less than $10 million. *See e.g. Van Vranken*, 901 F. Supp. at 297 (noting class counsel fee awards of 30- 50% are more typical where the common fund is less than $10 million).

1   Thus, the requested amount of attorney's fees and costs in this case is extremely reasonable

2   because Class Counsel has had to divert many of its resources to the Actions. Class Counsel's fees and

3   costs request is further warranted by the significant benefits achieved on behalf of the Class Members,

4   including substantial monetary relief.  Class Counsel's requested amount of attorney's fees is further

5   extremely reasonable when cross-checked against the actual lodestar amount we have incurred to date in

6   prosecuting and settling the litigation. [Hollis Decl. ¶¶ 150-153]

7   **G.    THE PROPOSED NOTICE TO CLASS MEMBERS IS ADEQUATE**

8   The court must provide class members the *best class action settlement notice practicable*.  *See*

9   *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S.

10  156, 174-75 (1974).  The proposed class notice here satisfies these requirements because it informs

11  Class Members, in plain language, about the terms of the Settlement and explains the payments to which

12  they are entitled under the Settlement. [Exhibit 2 to Hollis Decl.]  The proposed notice plan, calling for

13  first-class mailed notice to all Class Members, is consistent with class notices approved by state and

14  federal courts.  The Class Notice in this case summarizes the lawsuit, including the contentions and

15  denials of the parties, the proceedings to date, and the terms and conditions of the Settlement. [Hollis

16  Decl. ¶ 114-116] The Class Notice informs Settlement Class Members of where and how to get

17  additional information, and that a final approval hearing has been scheduled.  It also informs them of

18  their right to object to the adequacy of the Class Representatives and the Settlement, and explains the

19  procedure for filing and appearing to present such objections. *Id.* Additionally it notifies class members

20  of the procedure to request exclusion from the class.  *Id.*

21  **VI.   CONCLUSION**

22  For the foregoing reasons, Plaintiffs respectfully request that this Court enter the concurrently

23  filed [Proposed] Order granting preliminary approval of the Class Action Settlement, and approval of

24  the class notice and notice plan.

25  Dated: May 3, 2017                                    GRAHAM**HOLLIS** APC

26                                                        By:  /s Graham S.P. Hollis

27                                                        GRAHAM S.P. HOLLIS
                                                          Attorneys for Plaintiffs Jessica Jimenez, Orlando
                                                          Mijos, Sara Wright and Aggrieved Employees
28

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103